BANK OF GLOSTER v. EDWARD E. HINDMAN, RECEIVER, ET AL,

[50 South. 65.]

BANKS AND BANKING. *Cashier's power and authority. Execution of mortgages. Transfer of assets. Receiver.*

It is not within the usual course of the banking business, or the scope of a cashier's authority, for the cashier to execute mortgages on the bank's property and transfer its assets; and such unauthorized acts may be vacated in equity at the suit of a receiver appointed to administer the affairs of an insolvent bank.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

Hindman, receiver of the Central Bank of Mississippi, appellee and cross-appellant, was complainant in the court below; the Bank of Gloster, appellant, and the Pensacola Bank & Trust Company, cross-appellee, and others were defendants there. The Pensacola Bank & Trust Company, cross-appellant, made its answer a cross-bill against the receiver and the other defendants to the original bill. From a decree granting relief in favor of the receiver and the Pensacola Bank & Trust Company the Bank of Gloster appealed to the supreme court, and the receiver prosecuted a cross-appeal against the Pensacola Bank and Trust Company.

In May, 1907, W. J. Rice and N. T. Anders, promoters, purchased real estate in the city of Jackson for $31,000, of which $12,000 was paid by them in cash to the vendor while

the balance, $19,000, was secured by their deed of trust upon the realty. In June, a month later, the Central Bank of Mississippi, a corporation, was organized in said city for the purpose of engaging in the business of banking, Rice being its cashier and Anders its president. It advertised its authorized capital stock to be $500,000, but did not issue certificates for more than $104,000, and never collected its capital stock subscriptions to an amount exceeding $7,500. In November, 1907, Rice and Anders, for a consideration of $12,000 and the recited consideration that the bank should assume the $19,000 balance of unpaid purchase money due for the land, conveyed the same to the Central Bank of Mississippi. The money consideration of $12,000 in this deed to the Central Bank of Mississippi consisted in reality of a cash payment to Rice and Anders of $10,000 and the assumption by the Central Bank of Mississippi of an indebtedness due by Rice and Anders to the Pensacola Bank & Trust Company. This conveyance and the assumption of its $2,000 claim against Rice and Anders were unknown and unassented to by the Pensacola Bank & Trust Company, but Rice credited the $2,000 on the books of the bank to the Pensacola Bank & Trust Company, and subsequently the Central Bank of Mississippi paid $500 of this sum to the Pensacola Bank & Trust Company. Thereafter, in December, 1907, the Central Bank, by Rice as cashier, executed a deed of trust in favor of the Pensacola Bank & Trust Company on the realty mentioned, which recited the obligation of the Central Bank of Mississippi to pay the balance of indebtedness due to the Pensacola Bank & Trust Company. The Central Bank of Mississippi never enjoyed the confidence of the public in the city of Jackson, but succeeded in opening accounts with and securing deposits from numerous banks in other cities. Among such was the Bank of Gloster, appellant herein. In January, 1908, the Central Bank of Mississippi had become indebted to the Bank of Gloster to the amount of slightly over $11,000, at which time it failed to pay a draft for

$5,000 drawn upon it by the Bank of Gloster, and presented by the State Bank & Trust Company of Jackson as collecting agent. An attorney having been immediately retained by the Bank of Gloster, Rice was, after some delay, prevailed upon, as cashier and executive officer of the Central Bank of Mississippi, to execute in the name of his bank a promissory note payable to the State Bank & Trust Company evidencing the amount of the unpaid draft, and to secure this note by the Central Bank of Mississippi's deed of trust, executed by Rice as its cashier, in favor of the State Bank & Trust Company on the aforesaid realty subject to the prior $19,000 purchase money lien thereon. This deed of trust was not signed by Anders as president, was executed by Rice late at night, and was executed without authority or knowledge of any of the directors or officers of the debtor bank other than Rice.    Rice also turned over to the bank certain exchange drafts on foreign banks, but immediately thereafter the State Bank & Trust Company ascertained that the same were worthless, and prevailed upon Rice to turn over to it $500 in cash and other collaterals.    The State Bank & Trust Company endorsed the note evidencing the unpaid draft to the Bank of Gloster, and also turned over to it the $500 and the collaterals received from Rice.    Thereafter Rice transferred other collateral to other creditors, and later, when the directors ascertained these facts, it being apparent that the Central Bank of Mississippi was hopelessly insolvent, Hindman was appointed its receiver by appropriate court proceedings. The receiver instituted this suit to cancel the aforesaid deed of trust executed by Rice as cashier and all proceeding thereunder, including a conveyance made to the Bank of Gloster in attempted foreclosure of the said deed of trust, and to recover the $500 payment and transfer of collaterals made by Rice to the State Bank & Trust Company acting for the Bank of Gloster.    The bill also sought to cancel the deed of trust executed in December, 1907, by the Central Bank in favor of the Pensacola Bank & Trust Company, charging that these deeds of

trust were executed by the cashier of the Central Bank without authority or knowledge of the directors, hence should be held invalid in law. The Pensacola Bank & Trust Company made its answer a cross-bill and charged that the sum due it represented the balance of a fund which it had placed with Rice and Anders and which, with other funds, constituted the sole cash payment which Rice and Anders had made upon the realty in question purchased by them; that the deed of trust in its favor was *bona fide* and made with the authority of the board of directors of the Central Bank; that by reason of the conveyance by Rice and Anders of the realty to the Central Bank and the stipulations of their deed of conveyance Rice and Anders were entitled to a vendors' lien on the realty and that the Pensacola Bank & Trust Company was entitled to be subrogated to all of the rights of Rice and Anders.

The court below decreed that the conveyances made in favor of the State Bank & Trust Company were not made in the usual course of business and were made without authority, hence were void and should be cancelled, and that the State Bank & Trust Company and the Bank of Gloster should deliver to the receiver all collaterals and money received by them from Rice. It was further decreed that the Pensacola Bank & Trust Company was entitled to relief upon its cross-bill and that a lien in its favor should continue in force to secure the sum due it, $1,500.

*Green & Green,* for appellant.

If it be conceded that the cashier of an incorporated banking institution has no inherent right to make conveyances and transfers of realty belonging to the corporation, yet it does not logically follow that the creditors of the corporation, or a receiver acting for them, can have such conveyances and transfers set aside solely because the cashier may have exceeded his authority. A creditor of a corporation is not a member of the corporation, and has no voice in the administration of its affairs.

Rice was the agent of the Central Bank of Mississippi, and the scope of his authority as agent was determinable only by the limitations placed around him by the directors of the bank. *State v. Bank,* 6 Smed. & M. 218.

The right to avoid a transfer because informal is purely personal, and creditors as such have no right to question it. *Bank v. Bank,* 83 Miss. 610; *Epright v. Nicholson,* 78 Mo. 482; *Fargason v. Mercantile Co.,* 78 Miss. 65.

A bank cashier is the executive officer of the bank. Persons dealing in good faith with the officers of a corporation may rely upon what they do or omit to do in the exercise of their apparent powers. 10 Cyc. 938; *Jackson v. Bank,* 89 Pac. 220.

We are aware of the ordinary rule that it is beyond the power of the cashier to give a mortgage upon property of the bank; but the exception to such rule is well established that when a cashier is left in absolute and sole control of the bank by its directors his authority becomes broadened and coextensive with the exigencies of the situation. *Coal Co. v. Agricultural Works,* 63 Wis. 49; *Beers v. Glass Co.,* 14 Barb. 360; *Steel Works v. Bresnaham,* 60 Mich. 322, 27 N. W. 524; *Gillett v. Campbell,* 1 Denio, 522.

*Coleman & McClurg,* on the same side.

It cannot be the law that a bank depositor who has actual knowledge of the bank's insolvency and who wishes to protect himself must resort to the complicated procedure to have a receiver appointed for the bank rather than take more direct steps to get his money or secure his deposit. There was no fraud perpetrated by the Bank of Gloster in securing the conveyances for its protection. *Locke v. Friedman,* 43 South. 673.

The idea that every time a person deals with the officer of a corporation, or a person assuming to act in the corporation's behalf, he must under all circumstances take his chances on whether such officer or supposed officer has been specially au-

thorized in regard to the matter in hand, should have no place in the law of our present day.    Bolles on Banking, 336.

*Watkins & Watkins,* for appellee and cross-appellant.

As regards the conveyances and transfers made by Rice to the State Bank & Trust Company for the benefit of the Bank of Gloster, it is sufficient to say that it is not within the usual course of a bank's business or within the scope of the cashier's authority for the cashier to execute such conveyances on the bank's property without authority of the board of directors. The evidence shows that the board of directors were absolutely ignorant of Rice's actions in executing such conveyances, and the board never did ratify the same.    *Smith v. Lawson,* 41 Am. Rep. 688; *Bank v. Wheeler,* 21 Ind. 94; *City Bank v. Persons,* 29 N. Y. 554; 5 Cyc. 472; *Stowe v. Wise,* 18 Am. Dec. 101; *McCarty v. Collins,* 87 Mo. 164; *Windsor v. Bank,* 18 Mo. App. 665; *Hayden v. Dooley,* 34 C. C. A. 344; *Lamb v. Cecil,* 28 W. Va. 653.

The court below erred in decreeing that the Pensacola Bank & Trust Company were entitled to subject the real estate in question to their claim of $1,500.    The Pensacola Bank & Trust Company was not entitled to subrogation.    27 Am. & Eng. Ency. of Law (2d ed.), 203.

*Alexander & Alexander,* for cross-appellee.

It is not contended by cross-appellee, Pensacola Bank & Trust Company, that the deed of trust executed by Rice as cashier in its favor is valid as a deed of trust.    On the other hand we admit its invalidity for want of the cashier's lack of authority. While the cross-bill of the Pensacola Bank & Trust Company prayed for subrogation we have never contended that it was entitled to a strict subrogation of the lien of Rice and Anders upon the land.    We demanded a lien for the unpaid purchase money, which lien was already in equity extant; and our demand was predicated of the fact that the money of the Pensa-

cola Bank & Trust Company had been used by Rice and Anders in purchasing the land, and that their action resulted in establishing a right thereto on the part of the Pensacola Bank & Trust Company to hold the land for repayment of their money claim against Rice and Anders. The court below upheld our view, under Code 1906, § 4001, on the ground that the assignee of a claim for the purchase money may enforce the vendor's lien as the vendor could. *Perkins v. Gibson,* 51 Miss. 699; 1 Story Eq. Jur. 791; *Pinchain v. Collard,* 13 Tex. 333; *Welbourne v. Williams,* 1 Page, 502.

The fact that Rice was a defaulter does not in any way tend to defeat the claim of the cross-appellee. Cross-appellee owed Rice nothing, and no lien is sought by cross-appellee because of any alleged equities of Rice, for he had none.

MAYES, J., delivered the opinion of the court.

The facts of this case settle it, and on the facts the chancellor could have rendered no decree other than the one that was rendered. If during the life of the Central Bank it ever had a solvent moment, it is fairly inferable from the testimony that it was before Rice was empowered by the board of directors to take charge of its assets as cashier. It is indisputably shown that all payments made to the Bank of Gloster and the transfer of collaterals and the mortgages of property belonging to the Central Bank was the enterprise of Rice on his own account, and was unknown to the directors and not acquiesced in by them in any way, or ratified either actually or constructively. There are limitations on the power of the cashier of a bank to deal with the assets of the bank, and we think that Rice went beyond any power that the courts have yet held a cashier to possess. Giving mortgages on the bank's property, and transferring its assets, and destroying the bank itself, were not acts done by Rice within the usual scope of his authority or in the usual course of business; and this applies not only to the execution of the mortgages without the consent of the directors,

but also applies to the $500 paid to the Bank of Gloster at the time, and to such collaterals as were turned over to the State Bank & Trust Company for the benefit of the Bank of Gloster.

The decree of the chancellor is in all respects correct, and is affirmed on both direct and cross appeal.

*Affirmed.*