MAUD N. HAMILTON, APPELLANT, V. FRED D. WEAD, APPELLEE: MAUD N. HAMILTON, TRUSTEE, APPELLANT.

FILED MARCH 25, 1932. NO. 27889.

*A. H. Murdock* and *Arthur C. Pancoast*, for appellant.

*Swarr, May & Royce*, contra.

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

March 13, 1906, C. Will Hamilton, party of the first part, and Fred D. Wead, party of the second part, entered into a contract, the terms of which were as follows:

"Memorandum of Agreement

"By and between C. Will Hamilton, hereafter known as party of the first part, and Fred D. Wead, the party hereafter known as party of the second part, witnesseth:

"That whereas, Fred D. Wead has purchased for C. Will Hamilton the following described property: * * * for the sum of $4,900; and whereas said party of the first part proposes furnishing the money necessary to purchase said property it is therefore mutually agreed as follows:

"First. That said party of the first part pays for and takes title to said property.

"Second. That said second party takes charge of and cares for said property, collecting rent and making such repairs as seems necessary, paying taxes, both regular and such instalments of special taxes before they become delinquent each year during the term of this contract.

"Third. It is understood that said party of the first part is to receive six per cent. interest per annum, payable semiannually on the money he invests in purchasing said property whether the property rents for sufficient amount to pay that or not, after making necessary repairs. Said party of the second part to make up from his own funds any deficit in rents so that said first party shall in no event receive less than six per cent. interest semiannually.

"Fourth. Any excess received from rent above six per cent. after paying necessary repairs and taxes is to be divided equally between the parties hereto.

"Fifth. When it is deemed advisable to sell said property by said second party, at not less than purchase price, said first party is to make conveyance and receive the consideration thereof, until the purchase price this day paid is fully refunded together with interest aforesaid.

"Sixth. It is further agreed if after five years from date in case the above described property has not been sold or disposed of and the party of the first part not reimbursed for all moneys paid out by him, be it pur-

chase money or moneys paid for taxes or repairs on said property, then said party of the second part shall pay said party of the first part 50 per cent. of the amount still invested and receive a deed for an undivided one-half of said property or as much thereof as has not been previously disposed of, subject to special taxes not delinquent.

"Seventh. When party of the first part shall have received payment in full of his principal and interest from sale of said property, then the remainder of the property, if any, shall belong to the parties to this agreement in equal shares.

"The intention of this agreement being that said C. Will Hamilton is first guaranteed repayment of principal and six per cent. interest on purchase price of said property, and that profits or losses shall be shared equally by the parties hereto.

"This agreement to be binding upon the respective heirs and assigns of the parties hereto.

"Executed this 13th day of March, A. D. 1906.

"Executed in duplicate in presence of Pauline Prince.

"(Signed)  C. Will Hamilton.
"(Signed)  Fred D. Wead."

The agreement, it will be noted, was originally for the term of five years, but on June 8, 1912, by mutual consent, the time was extended to May 19, 1916. Subsequent to that date, however, the contract was treated and acted upon by both parties as still subsisting up to the death of Hamilton January 14, 1928, the defendant Wead retaining possession and control of the property, collecting the rents, paying the expenses and taxes, and paying to Hamilton 6 per cent. interest on the purchase price, $4,900, until November, 1927.

By the will of Hamilton, after devising and bequeathing his estate to be held in trust, said Hamilton bequeathed to his widow, Maud N. Hamilton, plaintiff, "all of the annual income of said estate so held in trust to be used and enjoyed by her during the term of her natural life for her own sole and separate use."

The present action was brought by plaintiff to recover $588 and interest, being two years' interest claimed to be due under said contract from November, 1927, to November, 1929. Defendant Wead filed an answer and cross-petition in which he alleged that he was not obligated to guarantee or pay interest on said investment subsequent to May 19, 1916; that the transaction evidenced by said contract was a joint venture, and that defendant had paid more than half of the cost of the venture; that any interest of the plaintiff in said contract was held by her as trustee under another provision of the will, and prayed that said trustee be made a party defendant, which was done, and for an accounting of the amount due defendant under said contract, and that the same be declared a lien upon the interest of said trustee in said real estate. Replies were filed by Maud N. Hamilton as an individual and trustee, putting in issue the allegations of the answer.

It appears from the record that defendant Wead has paid out the following amounts:

| | |
|---|---|
| Interest on $4,900 to November, 1927, to Hamilton, | $6,174.00 |
| Taxes, including 1929, the sum of | 6,089.17 |
| Expenses, including 1930, the sum of | 2,143.24 |

He collected rents, including 1930, in the sum of $6,438.21. It will therefore be noted that the taxes and expenses paid ($8,232.41) were in excess of the income ($6,438.21) in the sum of $1,794.20, which represents the total amount of Wead's investment in the venture, leaving out of consideration the interest paid to Hamilton ($6,174).

By decree of the district court it was found that the interest paid by Wead to Hamilton was a voluntary payment and that Wead was not entitled to credit therefor, nor any interest thereon. With this finding we concur. It was then found that Wead had paid out $7,968.20 more than he had received and treated this amount as the investment Wead had in the property. The above amount was arrived at by adding together the three items paid by Wead, viz., interest $6,174, taxes $6,089.17, and ex-

penses $2,143.24, total $14,406.41, and deducting therefrom amount received, $6,438.21, remainder $7,968.20. Discarding the fraction, this amount was compared with $4,900 taken as amount of Hamilton's investment, and respective interests in the property declared to be: Wead 7968/12868, Hamilton 4900/12868, and ordered partition in those proportions. Maud N. Hamilton individually and as trustee appeals.

The principal dispute arises over the allowance of the interest paid by Wead to Hamilton to be considered- as a part of Wead's investment, and in view of the finding that Wead's payment of interest was voluntary and that he is not entitled to any credit therefor, we are unable to understand why it should be included in the figure $7,968. On the basis of the findings the proportions should be: Wead 1794/6694 and Hamilton 4900/6694.

The property has probably decreased in value, and partition other than by sale does not seem practicable; it will be interesting, therefore, to glance at the results should the property be sold under the decree of the district court:

Under the decree if the property sold for $12,868
Wead's share $7,968
Hamilton's share 4,900 12,868

This would simply give Hamilton his money back with interest, to which he is entitled *before any profits or losses are divisible*. Wead would make a profit of $7,968 less $1,794; in other words, Wead gets $6,174, interest on $1,794, and Hamilton the same amount on $4,900, and this notwithstanding Hamilton's investment of $4,900 has run for 24 years while Wead's $1,794 has accumulated during that period. Wead would therefore receive over 14 per cent on his investment if he had put $1,794 into the original purchase price.

The same result in proportion is reached if the property sells for ½ or ¼ of the above price, e.g.:

If property sells for ¼ $3,217
Wead's share $1,992

| | | |
|---|---|---|
| Hamilton's share | 1,225 | 3,217 |
| Wead's profit $1,992 less $1,794 | | 198 |
| Hamilton's loss 4,900 less 1,225 | | 3,675 |

It seems to me these results demonstrate the incorrectness of the decree.

Upon the proper basis, as above suggested, and property sells for $6,694

| | | |
|---|---|---|
| Wead's share | $1,794 | |
| Hamilton's share | 4,900 | 6,694 |

Hamilton receives his money back with interest and Wead is made whole on his investment, but is out the interest paid to Hamilton which he was to make good "from his own funds" in case of a deficit in rents. (Par. 3 of contract.)

If property sells for ½ above $3,347

| | | |
|---|---|---|
| Wead's share | $ 897 | |
| Hamilton's share | 2,450 | 3,347 |

To equalize the losses Wead must pay Hamilton $776.50, thus the loss of each would be $1,673.50 or ½ of $3,347.

In the above illustrations the sale figures are considered net.

That Hamilton was to receive 6 per cent. on his investment, *at all events,* is clearly established by five provisions of the contract, viz.: Third. Hamilton "is to receive six per cent. interest per annum, payable semiannually on the money he invests in purchasing said property whether the property rents for sufficient amount to pay that or not, after making necessary repairs. Said party of the second part to make up from his own funds any deficit in rents so that said first party shall in no event receive less than six per cent. interest semiannually." Fourth. "Any excess received from rent above six per cent. after paying necessary repairs and taxes is to be divided equally between the parties hereto." Fifth. Upon sale of property at not less than purchase price, first party to receive the purchase price together with interest aforesaid. Seventh. When Hamilton "shall have received payment in full of his principal and interest

from sale of said property, then the remainder of the property, if any, shall belong to the parties * * * in equal shares." The intention being that "Hamilton is *first* guaranteed repayment of principal and six per cent. interest on purchase price."

There is nothing in the contract indicating that Hamilton shall refund to Wead any interest, and yet by the decree under review he is. required so to do to the extent of 50 per cent. by the inclusion of interest paid as part of Wead's investment.

It is claimed by appellee that the contract should be treated as terminated upon the expiration of the five-year extension, but this is quite inadmissible. The parties treated the contract as existing for nearly twelve years thereafter until the death of Hamilton, Wead continuing to manage the property and paying interest according to its terms. In fact, no step was taken by either party to terminate the contract until the filing of the cross-petition in this case by Wead. Such action was open to either party during that period, but, not having been taken, the conduct of the parties under it is conclusive evidence that it was considered still in force, and the law so declares.

It is further claimed by appellee that under the sixth paragraph of the contract Hamilton was to advance money for taxes and repairs, but there is nothing in the language of that or any other part of the contract warranting such claim. True, that paragraph provides that if property has not been sold after five years and Hamilton not reimbursed for all moneys paid out by him, "be it purchase money or moneys paid for taxes or repairs," then Wead shall pay 50 per cent. of the amount still invested and receive a conveyance of one-half of the property. Technically considered, Wead would be required to tender or pay Hamilton 50 per cent. of the purchase price before he would be entitled to a conveyance or become the owner of one-half; but both parties seem to consider this paragraph operative upon any sale of the property and

such construction appears proper and equitable, and we adopt it.

Let us see what the situation would have been if the property had been sold after the five-year extension, say at end of year 1916 for $4,900 net:

| | |
|---|---|
| Expense to that date | $ 894.41 |
| Taxes | 2,316.73 |
| | 3,211.14 |
| Rents | 2,602.44 |
| Loss in operation | $ 608.70 |

Hamilton would receive his money back and would have to pay Wead $304.35.

The lower court found that the contract was a joint venture, and then proceeded to adjudicate the rights of the parties on a 50-50 basis. But joint ventures are not always on that basis, and the present one surely not. Wead paid no portion of the purchase price, but in addition guaranteed Hamilton should first receive his money back with 6 per cent. interest. The contract or venture in short was this: Wead was a realtor and was convinced that the property in question was a good speculation in view of the fact that it was seriously contemplated that a new Union Station would be built in the vicinity, and that this property would be needed or would greatly increase in value. Hamilton was a wealthy banker, as suggested by counsel for appellee. The banker was probably concerned about the safety of his principal and interest; so it was arranged that Hamilton put up the purchase price, Wead to manage the property, and after repaying Hamilton, the anticipated profits would be divided equally when the property was sold; or if there was a loss it should be borne equally after Hamilton had been repaid. Suppose the property had been sold the next day after its purchase for $4,000, Hamilton would be entitled to the money and Wead would have had to pay him $450 in addition. Can there be any question about this?

Appellee contends that the entire contract, taken to-

gether, should be construed and enforced by comparing the total moneys paid out by each party, the difference representing the loss; and special stress is laid upon the second part of the seventh paragraph reading as follows:

"The intention of this agreement being that said C. Will Hamilton is *first guaranteed repayment of principal and six per cent. interest* on purchase price of said property, and that profits or losses shall be shared equally by the parties hereto." (Italics ours.)

Appellants claim that the provision as to profits or losses must be disregarded as "hopelessly irreconcilable with the remainder of the contract;" but such course is not necessary, if permissible.

In the construction of contracts as well as statutes it is often necessary to supply a word which the context indicates was intended to be inserted by the parties or which is necessary to express the real intent. A contract is to be construed upon what it expresses in terms and what is necessarily implied from those terms. *Goodrich v. Hubbard*, 51 Mich. 62. Omitted words clearly in place by implication may be supplied by construction of a statute. *Irwin v. Nichols*, 87 Ark. 97; *Dodd v. Mitchell*, 77 Ind. 388; *State v. Railroad Commission*, 137 Wis. 80.

It would seem clear that interest and principal are excluded from "profits and losses" by the requirement that it be "first guaranteed," and the context suggests the word to be supplied in order that the writing may express the full intention of the parties.

In this sentence the word "then" or "thereafter" must be considered as implied or understood between the words "and" and "profits," as otherwise the words "first guaranteed" have no meaning. When one thing or operation is placed "first," any other thing or operation must necessarily follow. Two things cannot be first. In the sentence "We will first go to the opera and to supper" the word "then" is understood.

For the reasons above stated we think the learned district judge erred in the construction of the contract and the judgment must be reversed.

Inasmuch as neither party took any step to terminate the contract until the filing of the cross-petition herein, we have experienced some difficulty in fixing the time at which it should be terminated, but have concluded to fix it at the date of filing of this action, at which time litigation began.

It is therefore ordered that the judgment of the district court be reversed and the cause remanded, with directions to state the account between the parties at the time of such accounting; that the investment of Hamilton shall be $4,900, plus interest at 6 per cent. to date of suit, and that of Wead the total amount of taxes and expenses paid less rents received, and that partition be ordered in the proportion thus determined.

In case partition cannot be made, that the property be sold and proceeds applied, first, to payment of Hamilton's principal and interest, second to Wead's investment, any balance to be divided equally.

If the proceeds of sale are insufficient to satisfy the investments of both parties in full, they shall be applied, first, to the payment of Hamilton, second to Wead, and any loss to be borne equally, and decree rendered requiring payment necessary to equalize such loss to the party entitled.

REVERSED.