LINCOLN JOINT STOCK LAND BANK, APPELLANT, V. JOHN H. BEXTEN ET AL., APPELLEES.

FILED JULY 9, 1935. No. 29471.

*Good, Good & Kirkpatrick, Brogan, Ellick & Shoemaker* and *James J. Fitzgerald, Jr.,* for appellant.

*Finlayson, Burke & McKie, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and LOVEL S. HASTINGS and LIGHTNER, District Judges.

HASTINGS, District Judge.

This is an action at law commenced in the district court for Douglas county, Nebraska, by the Lincoln Joint Stock Land Bank of Lincoln, Nebraska, as plaintiff, against John H. Bexten, Mary A. Bexten, his wife, and the First National Bank of Omaha, Nebraska, as defendants, upon a written contract wherein the plaintiff is named as party of the first part and the defendants Bexten as parties of the second part. At the conclusion of the taking of the evidence the defendants made separate motions asking the court to direct the jury to return a verdict in their favor,

or, in the alternative, that the court dismiss the action against each of them. The trial court dismissed plaintiff's cause of action against each and all of the defendants. Plaintiff appeals from the judgment of dismissal. .

This is the second appearance of this case in this court; the earlier is reported in 125 Neb. 310. The first appeal was taken by the plaintiff from an order sustaining separate demurrers of the defendants, the First National Bank of Omaha and Mary A. Bexten; the ground of the demurrers being that the petition did not state facts sufficient to constitute a cause of action. Plaintiff elected to stand upon its petition. This court held that the petition stated a cause of action and reversed and remanded the cause.

This cause was tried upon the same petition that was before this court for consideration in the first case, and reference is made to the opinion in that case for the statement of the facts alleged in the petition.

After reversal, John H. Bexten filed his answer, in which he admitted that he took the title to the real property described in plaintiff's petition at about the time named therein, admitted that he entered into an agreement with the plaintiff on or about the date alleged in plaintiff's petition, and denies that he assumed or agreed to pay, or intended to assume or agree to pay, the Lacey note and mortgage. He further alleged that he had determined to discontinue making the semiannual payments and had so informed plaintiff's agent and representative, and that, as an inducement to him to continue making the payments, plaintiff agreed to reduce the rate of interest and to reduce the amount of the semiannual payments; that, pursuant to negotiations in respect thereto, plaintiff submitted to said defendant for examination a printed instrument which defendant did not read or carefully examine, but which he believed to be an acknowledgment of the understanding reducing the rate of interest and semiannual payments. He further denied that he was the agent of the defendant First National Bank in executing said agreement or any

other instrument in connection with said matters, and denied that he was authorized for or in behalf of said bank to enter into said agreement in behalf of said bank.

The defendant First National Bank filed a separate amended answer in which it alleged that John H. Bexten took and held the title to the property, described in plaintiff's petition, as trustee for the defendant, and specifically denied that it authorized the defendant John H. Bexten for it or in its behalf or in its name to make or execute or enter into said extension agreement. Said defendant denied generally each and every allegation in plaintiff's petition.

Plaintiff filed separate replies to the respective answers, consisting of a general denial.

Briefly summarized, the essential facts are that on June 11, 1919, one Lacey procured a loan from the plaintiff of $35,000, the payment of which was secured by a mortgage on a section of land in Monona county, Iowa. The promissory note for which the mortgage was given to secure drew 6 per cent. interest from April 1, 1919, until maturity, which was payable semiannually, $1,225 on the 1st day of October, 1919, and a like sum on the 1st day of April and October in each year until 65 semiannual payments had been made, and a final payment of $1,023.05 on the 1st day of April, 1952. Thereafter there was assigned to the defendant bank, as collateral to a loan of a borrower, a second mortgage on the land in question securing $20,000, and later said bank became the owner of said second mortgage to protect itself on the loan to which it was collateral. In 1922 or 1923 the plaintiff commenced foreclosure proceedings, and the defendant bank became interested in acquiring title to the land involved to protect its second lien. Before acquiring the title it was agreed that plaintiff would dismiss the foreclosure proceedings and reinstate the loan if the defendant bank paid the delinquent instalments and taxes. Pursuant to said agreement plaintiff dismissed the foreclosure proceedings and reinstated the loan, and defendant bank paid the delinquent items on April 25,

1923, then amounting to $7,508.28. The title to the land was taken in the name of John H. Bexten in April, 1923, who then was cashier of defendant bank, for the convenience of the defendant bank. The defendant bank thereafter, through its agents and employees, leased the land, collected rentals, and paid interest and taxes thereon from October 1, 1923, to April 1, 1926, inclusive. The defendant John H. Bexten, who became cashier of defendant bank in 1922, resigned his position in 1929, and severed his connection with said bank, and, at the request of defendant bank, Bexten conveyed the land to Mr. Elliott, assistant cashier of the bank, who held it for the same purposes that Bexten had held it.

On September 10, 1926, the contract upon which this action is brought was entered into between the plaintiff bank, as "party of the first part," and John H. Bexten and his wife, Mary A. Bexten, as "parties of the second part," which, by its terms, reduced the rate of interest from 6 per cent. to 5¼ per cent. per annum, resulting in the reduction of the semiannual payments to $960.93. The agreement also stipulated for an acceleration of the maturity of unpaid instalments in the event of default of the payment of any one of the instalments, and extended the time of final payment to the year 1966. It provided that after five years from the date of the agreement "the mortgagor" had the option of paying in advance upon any regular instalment date any number of payments on account of the principal of the loan, etc. Also: "Part......of the second part agrees to make said payments as herein provided and the said original note and mortgage shall continue in full force and effect as originally made except as extended and modified by this agreement." The contract was signed in the name of plaintiff by its president, as "party of the first part," and by defendants John H. Bexten and Mary A. Bexten, as "parties of the second part." The contract was executed in duplicate, Bexten retaining a copy and transmitting the original to plaintiff. Bexten testified he placed the copy retained with his personal pa-

pers in the defendant bank, and shortly before the first semiannual payment became due in October, 1926, advised the officers of defendant bank that he had entered into the contract whereby the rate of interest had been reduced to 5¼ per cent., but did not show them the contract, nor did they ask to see it. The instalments, as provided in said contract, were paid by the defendant bank as they became due to October 2, 1930. Default was made on the instalment due on April 1, 1931. Thereupon the plaintiff commenced foreclosure proceedings in Iowa, to which defendant bank and the defendants Bexten were made parties, constructive service was had upon these defendants, a decree of foreclosure was entered, the land sold, and the plaintiff bought the same at the sale had November, 1931, for $23,000. When the deed was received by the plaintiff, after credit had been given for the amount paid, the amount remaining due to the plaintiff was $10,916.47.

It further appears from the correspondence between the plaintiff and defendant bank, previous to the time that the contract in question was entered into, that plaintiff was advised that the defendant bank was the owner of the land on which it held its mortgage, how it became the owner, and that the defendant John H. Bexten had no interest therein, and that he held the mere naked legal title for the benefit of the bank, without any management or control over the same except as an officer and agent of the bank.

It is conceded by counsel for plaintiff that the motion of the defendant Mary A. Bexten was rightfully sustained, as the evidence fails to sustain the allegations of plaintiff's petition as to the recovery of a valid personal judgment against her for the deficiency in the foreclosure proceedings in Iowa, and that, having signed the contract solely as the wife of John H. Bexten, she incurred no liability thereunder.

Error is assigned in sustaining the motions of defendant bank and of the defendant John H. Bexten to dismiss as to each of them. The trial court, in sustaining the motions of the defendant bank and John H. Bexten, said: "How-

ever, I do not believe that the parties intended that the clause 'Part......of the second part agrees to make said payments as herein provided' should be binding or a part of the agreement because they failed to fill in the blank space after the word 'Part' with the letters 'ies.' " No other reason was given by the trial court for the sustaining of said motions.

Based upon the ground assigned by the trial court for the dismissal as against said defendants, it is urged by their counsel that the failure to insert the letters omitted from the assumption clause of the contract rendered it void. This position is untenable. It appears from the contract that the letters necessary to fill the blank are clearly indicated by the agreement itself and no ambiguity arises in connection therewith. "Where the context of a written contract clearly implies or suggests that a certain word has been omitted, such word will be supplied by construction to fully express the intention of the parties." *Hamilton v. Wead*, 122 Neb. 854. See, also, *Kannow & Sons v. Farmers Cooperative Shipping Ass'n*, 76 Neb. 330.

Where a word or a part of a word is omitted by inadvertence from a written contract, the same may be supplied by construction at law without resort to reformation, if the context shows that the word or part of a word is omitted. 4 Page, Contracts (2d ed.) 3503; 13 C. J. 538; *Oleon v. Rosenbloom & Co.*, 247 Pa. St. 250; *Rapp v. Linebarger & Son*, 149 Ia. 429; *Donnybrook State Bank v. Corbett*, 37 N. Dak. 87.

When this court held that the petition stated a cause of action in the former appeal, there was attached thereto as a part thereof an exact copy of the original contract introduced in evidence herein, and while the question here presented was not directly raised, this court, in holding the petition stated a cause of action, held, in effect, that the omissions of the letters in the blank in the assumption clause did not invalidate the contract. It follows that the failure to fill in the letters in the blank left in the assumption clause did not furnish a sufficient ground to warrant

the dismissal of plaintiff's cause of action against said defendants or either of them.

In their brief counsel for defendants "Concede that unless the omission of the word 'parties' from the agreement renders that part of it ineffective, so that there is no assumption of the debt, the defendant Bexten is otherwise liable, and the order of the district court, dismissing him from the case, would therefore be erroneous."

The defense tendered by the answer of the defendant John H. Bexten that he did not read the contract and know that the assumption clause was contained therein, under the facts, is not available to him. "Courts do not permit one to avoid a contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form." *Von Knuth v. Ryan,* 107 Neb. 351.

It is urged by counsel for the defendant bank that the judgment of dismissal was properly sustained in its behalf because there is no evidence that the defendant Bexten was the agent of the defendant bank with authority to bind the bank by signing the extension agreement with the clause assuming liability for the payment of the mortgage debt therein. It is not claimed that the defendant Bexten did not have authority, as an officer and agent of the defendant bank, to execute the extension agreement for the reduction of the rate of interest and the extension of time of payment, but that he exceeded his authority as an agent when he executed the extension agreement with the assumption clause included.

Counsel for plaintiff discusses, from four points of view, the authority of the defendant Bexten to bind the defendant bank, and the liability of the bank for his act: First, actual authority; second, inherent authority; third, apparent authority; fourth, ratification.

Counsel for plaintiff contends that a by-law of defendant bank gave Bexten, as cashier of the bank, actual authority to enter into and sign the contract in question.

The by-law on which the contention is based is as follows: "All contracts, checks, drafts, etc., and all receipts for circulating notes received from the comptroller of the currency, shall be signed by the president, cashier, or other duly authorized officer." As we construe the by-law, it refers only to contracts authorized by the board of directors, or such as were within the inherent power of the cashier to enter into. There is no evidence that Bexten was authorized by the board of directors to sign and execute the contract in question. In the absence of express authority on the part of directors of the bank, the cashier did not have authority, inherent in his position as cashier, to bind the defendant bank by entering into a contract including assumption of liability. 4 Michie, Banks and Banking (Perm. ed.) 133; *United States v. City Bank of Columbus,* 21 How. (U. S.) 356; *Bilbo v. Ball,* 194 Ia. 875; *Spongberg v. First Nat. Bank,* 18 Idaho, 524; *Bank of Gloster v. Hindman,* 95 Miss. 742; *Montgomery Bank & Trust Co. v. Walker,* 181 Ala. 368.

We have defined apparent authority of an agent which will bind his principal, to be: "The apparent authority of an agent which will bind his principal is such authority as the agent appears to have by reason of the actual authority conferred upon him by his principal." *Mangiameli v. Southern Surety Co.,* 111 Neb. 801. The facts and circumstances disclosed by the evidence are wholly insufficient to show apparent authority to obligate defendant bank for the payment of the mortgage debt.

Counsel for plaintiff insists that, although the assumption of the payment of the mortgage debt by Bexten might have been in excess of his authority as agent for the defendant bank, nevertheless the evidence is sufficient, with the reasonable inferences to be drawn therefrom, to have warranted a finding that defendant bank, by accepting the fruits of the contract, ratified the same. In accord with numerous decisions of this court we have recently held:

"A principal who accepts the fruits of a contract made by an agent in excess of his authority is liable to the per-

son with whom such contract is made, if he had full knowledge or was put on inquiry from which he could have obtained full knowledge.

"Ratification by the principal of the unauthorized act of his agent has the same effect as prior express authority, and generally relates back to the time when the unauthorized act was done." *General Credit Corporation v. Moore,* 128 Neb. 881.

A few days after Bexten had entered into the contract for the benefit of the bank, the bank made the first payment thereunder to plaintiff. At that time its officers, through the defendant Bexten, had knowledge of the execution of the contract; that he had a duplicate thereof in his possession in the bank, and that by its terms the rate of interest and the amount of semiannual payments had been reduced. By reason of the agreement the defendant bank, for nearly five years, continued to enjoy and use the property encumbered by plaintiff's mortgage at a reduced interest rate and with postponed date of payment. The defendant bank benefited by the reduction in the amount of the nine semi-annual payments that it made on the contract. The officers of defendant bank were all men of large business experience, and whether, during the time that the bank was enjoying the fruits of the contract, they had full knowledge of its terms and conditions, or knowledge sufficient to have put them upon inquiry, presented a question of fact for the jury to determine. The fact that defendant Bexten testified that he did not read the contract, that he did not inform the officers of its terms, other than that it reduced the rate of interest, and that the other officers did not see the contract, was not conclusive that the bank, through its officers, did not have knowledge of the obligations imposed by the contract, or sufficient knowledge to put them on inquiry from which full knowledge could have been obtained. The reasonableness or unreasonableness of this testimony, and the weight to be given it, was for the jury. 21 R. C. L. 820, sec. 6. The question whether the defendant bank ratified the contract

entered into by Bexten was a question for the jury to determine.

It is contended by counsel for the defendant bank that the rule as to the liability of an undisclosed principal cannot be invoked against or in behalf of a principal known to the other party to the contract at the time the contract was made. Counsel further contend that where a person with knowledge of the agency enters into a contract with the agent, in the agent's name, his election to deal with the agent as an individual appears and takes place at the time of the making of the contract. The rule supported by the great weight of modern authority is stated in section 149, Restatement, Law of Agency: "A disclosed or partially disclosed principal is subject to liability upon an authorized contract in writing, if not negotiable or sealed, although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties."

In the comment on the rule stated, it is said:

"The fact that the principal's name is not in the instrument and that there is no appearance of agency upon the writing is some evidence that the parties intended that the agent alone should be liable. It is not sufficient evidence, however, to raise a presumption against the liability of a disclosed principal where it appears that, prior to the signing of the memorandum, the agent was known to be acting as an agent in the transaction.

"Upon the question of whether or not, under the circumstances, the third person accepted the credit of the agent only, the written memorandum binding the agent is not conclusive evidence, except where by its specific terms the principal is excluded as a party."

The same contention made here was made in the case of *Moore v. Consolidated Products Co.*, 10 Fed. (2d) 319. The court, passing upon this question, said: "The question, after all, is one of fact. Was the contract made for and in behalf of the principal? If it was, the act of the agent was the act of the principal, and the principal may sue or

be sued thereon. The great weight of modern authority applies the rule, both where the principal is known and where the principal is undisclosed, to the other party to the contract." Many authorities are cited by the court in that opinion sustaining this proposition.

Although the extension contract purports to be the contract of the defendant Bexten, his principal, the defendant bank, is not excluded by the terms thereof, or by agreement of the parties. The evidence shows that it was understood that Bexten was entering into the contract for the defendant bank, and for its benefit. The facts in this case show no election on the part of the plaintiff to deal with Bexten as an individual.

The liability of the defendant bank to make payment of all deferred instalments depends upon whether that element of the contract was ratified by the defendant bank. If so, the legal effect is the same as if Bexten had prior express authority to enter into the contract, and the defendant bank is liable thereon.

It follows from what has been said that error was committed in entering a judgment of dismissal for the defendants John H. Bexten and the First National Bank, and as to them the judgment is reversed and the case remanded for further proceedings. The judgment as to the defendant Mary A. Bexten is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.