THE NEW LIGHT COMPANY, INC., DOING BUSINESS AS THE GREAT
WALL RESTAURANT, APPELLANT, V. WELLS FARGO ALARM
SERVICES, A DIVISION OF BAKER PROTECTIVE SERVICES, INC.,
AND GENERAL ELECTRIC COMPANY, JOINTLY AND SEVERALLY,
APPELLEES.

525 N.W.2d 25

Filed December 23, 1994.   No. S-92-694.

Jeffrey R. Learned, of Morrison, Mahoney & Miller; Kile W. Johnson, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske; and, on brief, Marvin J. Monroe, of Denenberg, Tuffley & Jamieson, P.C., for appellant.

Michael G. Connery and Diana J. Vogt, of Kutak Rock, for appellee Wells Fargo.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WRIGHT, J.

The New Light Company, Inc. (New Light), sued Wells Fargo Alarm Services (Wells Fargo) and General Electric Company as jointly and severally liable defendants for damages sustained as the result of a fire in a restaurant owned by New Light. Wells Fargo had installed a fire alarm system in the restaurant. Wells Fargo moved for summary judgment, and the district court for Douglas County granted Wells Fargo's motion. The Nebraska Court of Appeals affirmed, holding that public policy did not justify the voiding of exculpatory language in the contract between Wells Fargo and New Light. We reverse the judgment and remand the cause for further proceedings.

## SCOPE OF REVIEW

In appellate review of a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994); *Steenblock v. Elkhorn Township Bd.*, 245 Neb. 722, 515 N.W.2d 128 (1994).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994); *Double K, Inc. v. Scottsdale Ins. Co.*, 245 Neb. 712, 515 N.W.2d 416 (1994).

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994); *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994).

## FACTS

New Light owned and operated The Great Wall Restaurant at

1013 Farnam Street in Omaha, Nebraska. On July 1, 1983, New Light and Wells Fargo executed an agreement which stated that Wells Fargo was to install and maintain a fire alarm system on the restaurant premises. Wells Fargo installed the system and maintained it through 1988. In October 1988, the parties signed a renewal of the agreement, which renewal contained an exculpatory clause stating that New Light agreed that Wells Fargo would not be liable for any loss or damage, irrespective of origin, to persons or property whether directly or indirectly caused by performance or nonperformance of any obligation imposed by the agreement or "by negligent acts or omissions of Wells Fargo Alarm, its agents or employees."

Wells Fargo failed to install a fire-sensing device in the basement-level clothes dryer room or the adjoining electrical room, which contained the main fire alarm control panel and its connection to the telephone junction box. On January 7, 1989, a fire began in the clothes dryer room. The fire alarm system failed to activate the outside alarm and communications system. The fire caused extensive damage to the building and its contents.

New Light's petition alleged, inter alia, that Wells Fargo was grossly negligent by failing to design, install, and maintain adequate fire-sensing devices in the electrical room or in the clothes dryer room of New Light's property; by failing to adequately test the fire detection system so as to ensure that a fire erupting in the electrical room or in the clothes dryer room would not incapacitate the system; by failing to take reasonable care in the design, installation, and maintenance of the system; and by failing to properly, diligently, and reasonably select, train, and supervise its employees and agents with regard to the design, installation, and maintenance of the system. New Light alleged that such acts were willful, wanton, and intentional and that they constituted gross negligence.

Wells Fargo generally denied the allegations and claimed that the petition failed to state facts sufficient to constitute a cause of action. As two of its affirmative defenses, Wells Fargo claimed that paragraph D of the renewal agreement exculpated Wells Fargo from liability and claimed that, in the alternative, such liability was limited to the lesser of the annual charges due

Wells Fargo from New Light pursuant to the agreement or $10,000.

Wells Fargo moved for summary judgment, alleging that the contract for protective alarm services between New Light and Wells Fargo relieved Wells Fargo of all liability for any losses suffered by New Light and, in the alternative, that Wells Fargo was entitled to partial summary judgment in that its liability was limited to the amount specified by the renewal agreement.

New Light's affidavits in opposition to the motion stated the following: The fire originated in a fluorescent light fixture mounted on the ceiling of the clothes dryer room, which was located in the basement at the rear of the premises. The fire smoldered for a long period of time before it was discovered. The fire alarm system failed to detect the fire, to activate its on-premises exterior alarm, and to send a signal to Wells Fargo's monitoring communications center because the system did not include a fire-sensing device in the clothes dryer room, where the fire originated, and because the system did not include a fire-sensing device in the adjoining electrical room, which resulted in the destruction of the fire alarm communication system before it could have been activated by fire-sensing devices located in other areas of the premises. One affidavit stated that the system, as designed and installed, was in violation of the National Fire Protection Association codes and that

> to design, install and maintain such a system as was installed in the Great Wall Restaurant is to be grossly negligent in that the system, as designed, installed and maintained:
>
> a) was in violation of codes and regulations governing such systems;
>
> b) was in violation of industry standards;
>
> c) failed to place a heat sensing device in the basement laundry/dryer room and adjoining electrical room where fires are very likely to occur; and
>
> d) failed to protect the very room where the fire alarm communication system was installed and thus prevented the system from operating should a fire occur in that room or the adjoining laundry/dryer room.

The district court granted Wells Fargo's motion for summary judgment and dismissed the action as it related to Wells Fargo. On appeal, New Light alleged that the district court erred in granting summary judgment in favor of Wells Fargo. The Court of Appeals affirmed, holding that the exculpatory clause was not contrary to public policy.

## ASSIGNMENT OF ERROR

In its petition for further review, New Light claims the Court of Appeals erred in holding that it is not contrary to public policy for a party to contractually exculpate itself from liability for its own gross negligence or willful and wanton misconduct.

## ANALYSIS

The issue for our determination is whether, as a matter of law, the exculpatory clause set out in paragraph D of the original agreement and the renewal agreement released Wells Fargo from liability for gross negligence or willful and wanton misconduct. The Court of Appeals held that public policy did not void the exculpatory provision in the renewal agreement which precluded the imposition of liability upon Wells Fargo for gross negligence or willful and wanton misconduct. In rendering its decision, the Court of Appeals relied upon our decision in *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988). The Court of Appeals' application of *Bedrosky* would have been correct if this case had involved exculpation from ordinary negligence.

In *Bedrosky*, a fire of uncertain origin began on the fifth and sixth floors of a building and spread to the elevator shaft, where it spread to the basement and the first floor, which was space leased to the plaintiffs. The plaintiffs claimed the defendant landlord, in violation of certain regulations of the State Fire Marshal's office, failed to enclose the elevator shaft; failed to install fire doors; and, in contravention of his representation, failed to keep the sprinkler system in proper working order. The plaintiffs made no allegations of gross negligence or willful and wanton misconduct.

The issue in *Bedrosky* was whether the exculpatory clause of the lease was effective to relieve the defendant from all liability. Paragraph 10 of the lease provided: " '[T]he Lessor shall not be or become liable for any damage . . . to said premises or to

said Lessee or to any other persons or property caused by . . . the act or neglect of any other person or caused in any other manner whatsoever.' " *Id.* at 202-03, 430 N.W.2d at 538. The plaintiffs argued that the phrase "caused by the act or neglect of any other person or caused in any other manner whatsoever" did not include negligence or intentional misrepresentation of the lessor.

In *Bedrosky*, we did not specifically address the issue of gross negligence or willful and wanton misconduct, and we do not now interpret *Bedrosky* to be a blanket approval of exculpatory clauses in all factual situations. We held that paragraph 5 of the lease plainly disposed of the misrepresentation claim. Paragraph 5 provided: " 'Lessee agrees and admits that no representation as to the condition or repair hereof has been made by the Lessor or his agent which is not herein expressed or indorsed hereon . . . .' " *Id.* at 202, 430 N.W.2d at 538. We found that the plain language of paragraph 10 did "not permit us to read into its meaning a provision limiting the exclusion to any of the specific causes previously enumerated in the lease." *Id.* at 208-09, 430 N.W.2d at 541. We did not find the language of the exculpatory clause to be a clear contravention of public policy.

Contrary to Wells Fargo's contention, we have not specifically addressed the public policy consideration regarding exculpatory clauses relating to gross negligence or willful and wanton misconduct. In *Mayer v. Howard*, 220 Neb. 328, 331, 370 N.W.2d 93, 96 (1985), the language released the defendant " 'from all liability . . . caused by the negligence of the releasees . . . .' " We held that Mayer had expressly assumed the risk of racing his motorcycle on the defendant's track after being fully informed of the dangers involved. The "Release of Liability" did not mention gross negligence or willful and wanton misconduct, and our holding was expressly based on the language at issue.

In *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 4, 443 N.W.2d 596, 599 (1989), the lease provided for indemnification for injury caused by conduct and stated the following in uppercase bold print: " 'The parties agree that Lessor shall only be liable or responsible for actions of wilful misconduct.' "

We held that although the clause did not contain the word "negligence," the intended consequence of indemnity was clearly and unequivocally expressed. The contractor was obligated to indemnify for conduct including negligence, but excluding claims based on Speedway's willful misconduct.

In determining whether the language of a particular exculpatory clause in a contract is a clear contravention of public policy, we must consider each agreement on the basis of the particular facts surrounding the agreement. We have defined public policy as

> " '[t]hat principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good. * * * The principles under which the freedom of contract or private dealings is restricted by law for the good of the community.' . . ."

*OB-GYN v. Blue Cross*, 219 Neb. 199, 203, 361 N.W.2d 550, 553 (1985). Accord *United Seeds, Inc. v. Hoyt*, 168 Neb. 527, 96 N.W.2d 404 (1959).

We have stated that " ' " '[g]ross negligence means great and excessive negligence; that is, negligence in a very high degree. It indicates the absence of slight care in the performance of a duty.' " ' " *Wicker v. City of Ord*, 233 Neb. 705, 714, 447 N.W.2d 628, 634 (1989). Accord *Jones v. Foutch*, 203 Neb. 246, 278 N.W.2d 572 (1979). Willful and wanton misconduct exists where a defendant had actual knowledge that because of its actions, a danger existed to the plaintiff and the defendant intentionally failed to act to prevent a harm that was reasonably likely to result. *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990).

Whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved. The right of contract may be restricted for the public good. The greater the threat to the general safety of the community, the greater the restriction on the party's freedom to contractually limit the party's liability. For example, a contractual agreement to dig a ditch does not have the same public policy considerations as would the installation of a fire alarm system

in a school, hospital, nursing home, restaurant, or other heavily occupied building. Common sense tells us that the greater the risk to human life and property, the stronger the argument in favor of voiding attempts by a party to insulate itself from damages caused by that party's gross negligence or willful and wanton misconduct.

In the factual setting in this case, when we balance the parties' right to contract against the protection of the public, we find a sufficiently compelling reason to prevent Wells Fargo from insulating itself by contractual agreement from damages caused by its own gross negligence or willful and wanton misconduct. Such an agreement would have a tendency to be injurious to the public. This limitation on the freedom to contract is imposed by law because of the potential risks to human life and property and is, therefore, independent of the agreement of the parties.

A similar exculpatory clause was determined to be contrary to public policy in *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 593 N.E.2d 1365, 583 N.Y.S.2d 957 (1992). The New York Court of Appeals stated that it was the public policy of the state that a party could not insulate itself from damages caused by grossly negligent conduct. Gross negligence was defined as "conduct that evinces a reckless indifference to the rights of others." *Id.* at 554, 593 N.E.2d at 1371, 583 N.Y.S.2d at 963. The court found that this policy would apply equally to contract clauses purporting to exonerate a party from liability and to clauses limiting damages to a nominal sum. We agree with the New York court that public policy with regard to gross negligence and willful and wanton misconduct applies both to clauses attempting to exculpate liability and clauses attempting to limit damages to a nominal sum.

We now apply the public policy considerations just outlined to the limitation-of-damages provision of the agreement in the case at bar. We note that Wells Fargo, in paragraph D of the renewal agreement, attempted to limit the amount of loss or damages attributable to the failure of the fire alarm system to the annual charge under the contract or $10,000, whichever was less. As written, this limitation on damages is unqualified, limiting all damages of whatever cause, including those that

accrue due to Wells Fargo's gross negligence or willful and wanton misconduct. We therefore hold that this limitation-of-damages clause does not create an enforceable limitation on Wells Fargo's liability for an action based upon gross negligence or willful and wanton misconduct. As was done in *Sommer v. Federal Signal Corp.*, *supra*, we hold that in this instance, public policy prevents Wells Fargo from limiting its damages for gross negligence or willful and wanton misconduct.

Paragraph D attempted to completely release Wells Fargo from liability for only its negligent acts or omissions. Based upon New Light's allegations of gross negligence and willful and wanton misconduct, the court should not have granted summary judgment. The parties are bound by the words of the contract. *Jones v. Burr*, 223 Neb. 291, 389 N.W.2d 289 (1986). A contract which is written in clear and unambiguous language is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994). Wells Fargo did not attempt to exculpate acts of gross negligence or willful and wanton misconduct from the contract. The pertinent part of paragraph D provided:

> Subscriber agrees that Wells Fargo Alarm shall not be liable for any of Subscriber's losses or damages, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of any obligation imposed by this agreement or by negligent acts or omissions of Wells Fargo Alarm, its agents or employees.

The exculpatory clause makes no mention of gross negligence or willful and wanton misconduct on the part of Wells Fargo. Therefore, gross negligence and willful and wanton misconduct were not contemplated by the parties. Even if the exculpatory clause could be construed to include gross negligence and willful and wanton misconduct, public policy prohibits such an exclusion.

A similar result was reached in *Douglas W. Randall, Inc. v. AFA Protective Systems*, 516 F. Supp. 1122 (E.D. Pa. 1981). The district court, in discussing Pennsylvania law, noted that

exculpatory clauses in contracts relieving a party from liability for negligence are valid. The exculpatory clause in that case provided: " 'The subscriber . . . agrees that the contractor shall be exempt from liability for loss or damage due directly or indirectly to occurrences . . . from negligence, active or otherwise, of the contractor . . . .' " *Id.* at 1127. The court held that the exculpatory clause limited the defendant's liability only with respect to acts of negligence, and not for acts of gross negligence.

We do not find any language within the agreement which clearly and unequivocally expresses an intention to limit Wells Fargo's liability for acts involving gross negligence or willful and wanton misconduct. We therefore hold that the exculpatory clause does not affect New Light's right to assert a cause of action based upon gross negligence or willful and wanton misconduct.

Since a material question of fact is presented as to whether Wells Fargo's actions constituted gross negligence or willful and wanton misconduct, we reverse the judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, J., concurs in the result.