RAY TUCKER & SONS, INC., A NEBRASKA CORPORATION,
APPELLANT, V. GTE DIRECTORIES SALES CORPORATION,
A DELAWARE CORPORATION, APPELLEE.

571 N.W. 2d 64

Filed December 5, 1997.    No. S-96-246.

Thomas E. Zimmerman, of Jeffrey, Hahn, Hemmerling & Zimmerman, P.C., for appellant.

Paul M. Schudel, of Woods & Aitken, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

Ray Tucker & Sons, Inc. (Tucker & Sons), sued GTE Directories Sales Corporation (GTE) to recover damages resulting from the failure to include Tucker & Sons' classified advertisement in the then Lincoln Telephone and Telegraph Company (LT&T) directory published in December 1993. Tucker & Sons contended that a limitation of liability clause relied upon by GTE was not included in its agreement with GTE or, in the alternative, that the clause was void because it was unconscionable and against public policy. Following submission on stipulated facts, the district court for Lancaster County entered judgment for GTE from which Tucker & Sons appeals. We find no error and, therefore, affirm the judgment.

## FACTS

GTE was LT&T's agent for sales of directory advertising and publication of LT&T's Lincoln and nearby communities telephone directory. Tucker & Sons, an asphalt repair and paving business, placed classified advertisements in the LT&T yellow pages from 1970 to 1993.

In securing orders for classified advertising to be included in the December 1993 LT&T directory, GTE utilized a form entitled "Contract for Directory Advertising," which was printed on both sides of a single sheet of paper. The front of the form included blank spaces in which specific information was typed, as well as a space for the advertiser's signature. The reverse side contained printed "Terms and Conditions," including the following:

> 6. Neither the Telephone Company nor its agent, GTE Directories Service Corporation, shall be liable to the advertiser for damages resulting from failure to include in the directory any individual item of advertising or for errors in the advertising printed in the directory, whether

or not occasioned through the fault of the Telephone Company, or its agent, in excess of the amount paid by the advertiser for said item of advertising shown on the face of this Contract. If any advertising is omitted or the entire classified advertising program is omitted, whether occasioned through the fault of the Telephone Company, or its agent, advertiser acknowledges and agrees it is difficult, if not impossible, to determine the exact amount of damages resulting from such omission. Accordingly, the parties agree an advertising credit shall be provided for the subsequent issue of the directory in an amount equal to the omitted advertising as liquidated damages.

On August 25, 1993, GTE sent an unsigned Contract for Directory Advertising for the December 1993 LT&T directory to Tucker & Sons by facsimile transmission. The front side of the document was transmitted but the reverse side was not. However, the following statement was located immediately above the signature line on the front side: "ADVERTISER ACKNOWLEDGES HE/SHE RECEIVED A DUPLICATE COPY OF THIS AGREEMENT AND HAS READ, UNDERSTANDS AND AGREES TO THE TERMS AND CONDITIONS ON THE REVERSE, INCLUDING LIMITATION OF LIABILITY PARAGRAPH NO. 6."

On August 26, 1993, Ray Tucker, president of Tucker & Sons, signed the document and returned it to GTE by facsimile transmission. As of that date, Tucker & Sons had not received the reverse side of the contract containing the terms and conditions referred to on the front side.

On August 28, 1993, Dan Gabel, GTE's division manager, mailed a confirmation letter to Tucker & Sons which included a copy of the entire Contract for Directory Advertising, including the reverse side containing the limitation of liability clause. Another clause on the reverse side of the form stated that the agreement could be canceled by either party within 7 days of the effective date of the contract. Tucker & Sons received this confirmation letter on August 29, and the effective date stated on the contract was August 26. Tucker & Sons did not exercise its right to cancel. Through GTE's inadvertence, Tucker & Sons' advertisement was not included in the LT&T directory published in December.

Upon realizing its error, GTE offered to waive all charges for the advertising and offered to print Tucker & Sons' advertisement in the next directory free of charge. In addition, GTE offered to print Tucker & Sons' advertisement in errata sheets that are distributed to each user of the directory. Tucker & Sons declined these offers and filed suit against GTE, alleging that GTE breached its contractual obligation and requesting damages for lost profits. The district court bifurcated the issues of liability and damages. By agreement, the parties submitted the liability issue on stipulated facts and exhibits.

The district court entered judgment for GTE on December 19, 1995. In an accompanying order, the district court held that there was an enforceable contract between GTE and Tucker & Sons and that the limitation of liability clause was a part of that contract. The court reasoned that the clause was referred to above the signature line on the first page of the signed agreement and that Ray Tucker had signed similar agreements with GTE for more than 20 years.

The district court stated that a necessary element in determining the validity of such a clause is the relative bargaining power of the parties. Because Tucker & Sons presented no evidence on this issue, the court held that the clause was valid and enforceable against Tucker & Sons.

After the district court overruled its motion for a new trial, Tucker & Sons commenced this appeal. Pursuant to our authority to regulate the dockets of the Nebraska Court of Appeals and this court, we removed the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Restated, Tucker & Sons asserts that the district court erred in (1) determining that the terms and conditions from the reverse side of GTE's standard form contract were a part of the 1993 agreement between the parties, (2) determining that the limitation of liability clause in GTE's standard form contract was valid and enforceable, and (3) denying Tucker & Sons' motion for a new trial.

## STANDARD OF REVIEW

When a case is tried on stipulated facts, the appellate court reviews the case as if trying it originally in order to determine

whether the facts warranted the judgment. *Anderson v. State*, 247 Neb. 871, 530 N.W.2d 899 (1995).

The construction of a contract is a matter of law, in conjunction with which an appellate court has an obligation to reach an independent conclusion irrespective of the determinations made by the trial court. *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996); *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997); *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997); *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997).

## ANALYSIS

In order to resolve the issue of whether the limitation of liability clause was a part of the contract between the parties, we must first determine, as a matter of law, whether the contract is ambiguous. See, *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997); *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Estate of Stine, supra*; *Daehnke, supra*. The document which GTE initially transmitted to Tucker & Sons makes specific reference to terms and conditions, including a limitation of liability clause, appearing on the reverse side; however, the reverse side was missing from the facsimile transmission, leading to reasonable but conflicting interpretations as to whether the clause was included in the contract. We conclude that this constitutes an ambiguity requiring judicial interpretation in order to determine whether the limitation of liability clause was included in the contract.

In general, a party is charged with knowledge of the contents of a writing when he signs it and cannot avoid a contract simply because he failed to read the entire writing. *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989); *General Motors Acceptance Corp. v. Blanco*, 181 Neb. 562, 149 N.W.2d 516 (1967). In *Blanco*, the purchaser of an automobile

claimed that a clause on the reverse side of the purchase agreement was not included in the contract. On the front page of the agreement, immediately following the title "Conditional Sale Contract," was the following statement: " 'The undersigned seller hereby sells, and undersigned buyer or buyers, jointly and severally hereby purchase(s), subject to the terms and conditions set forth below *and upon the reverse side hereof*, the following property . . . .' " (Emphasis supplied by court.) *Id.* at 564, 149 N.W.2d at 518. On the reverse side of the agreement, in small but legible type, the following clause was printed: " 'For the purpose of securing payment of the obligation hereunder, seller reserves title, and shall have a security interest, in said property until said obligation is fully paid in cash.' " *Id.* at 565, 149 N.W.2d at 518-19. The buyer argued that this clause was not a part of the contract and that he held unconditional title to the automobile. We rejected this argument, stating that the buyer was improperly ignoring the words " 'and upon the reverse side hereof.' " *Id.* at 566, 149 N.W.2d at 519. We held that the provisions on the reverse side of the contract, except as they may be unenforceable, were a part of the contract and must be considered.

As in *Blanco, supra*, the first page of the contract in this case made specific and obvious reference to additional terms contained on the reverse side, including the limitation of liability clause. However, the instant case differs from *Blanco* in that the text of the reverse side was missing completely from the facsimile copy of the document originally transmitted to Tucker & Sons. While we have never addressed the effect of a missing page in a contract, we have held generally that a contract will be read in accordance with the parties' intent despite the fact that the writing may contain clerical errors or inadvertent omissions. *Lincoln Joint Stock Land Bank v. Bexten*, 129 Neb. 422, 261 N.W. 845 (1935); *Hamilton v. Wead*, 122 Neb. 854, 241 N.W. 556 (1932); *Gentle v. Pantel Realty Co.*, 120 Neb. 630, 234 N.W. 574 (1931). See, also, *Slater v. Pearle Vision Center, Inc.*, 376 Pa. Super. 580, 586, 546 A.2d 676, 679 (1988) ("where it is clear that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions, the court will imply it"); *Southern Realty & Const.*

*Co. v. Bryan,* 290 S.C. 302, 312, 350 S.E.2d 194, 199 (1986) ("'[t]he policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made'").

In *Bexten, supra,* we addressed the validity of a contract which contained a blank space in which either the singular or plural form of the word "party" should have appeared. We stated:

> [I]t is urged . . . that the failure to insert the letters omitted from the assumption clause of the contract rendered it void. This position is untenable. It appears from the contract that the letters necessary to fill the blank are clearly indicated by the agreement itself and no ambiguity arises in connection therewith. . . .
>
> Where a word or a part of a word is omitted by inadvertence from a written contract, the same may be supplied by construction at law without resort to reformation, if the context shows that the word or part of a word is omitted.

Id. at 428, 261 N.W. at 848.

While *Bexten* involved the omission of only part of a word, the reasoning is applicable in the present case. The document which Tucker & Sons signed included a specific and conspicuous reference to the limitation of liability clause on the reverse side of the document. While this page was not originally transmitted to Tucker & Sons, it was clearly placed on notice that the clause was intended to be included in the contract. Three days after Tucker & Sons signed the front side of the contract and returned it to GTE, it received a confirmation letter which contained the full agreement, including the reverse side containing the limitation of liability clause.

In addition, there is undisputed evidence that Tucker & Sons had contracted with GTE to place classified advertisements in the LT&T directory from at least 1970 to 1993 and that each contract entered into with GTE during that period contained a limitation of liability provision similar to that at issue in this case. The express terms of a contract and an applicable course

of dealing or usage of trade shall be construed wherever reasonable as consistent with each other. *Production Credit Assn. v. Eldin Haussermann Farms,* 247 Neb. 538, 529 N.W.2d 26 (1995); *Bloomfield v. Nebraska State Bank,* 237 Neb. 89, 465 N.W.2d 144 (1991). The specific reference to the limitation of liability clause on the first page of the contract, when viewed in light of the parties' course of dealing, supports a reasonable interpretation that the parties intended to include a similar limitation of liability provision in the 1993 contract, and that the omission of the clause from the initial facsimile transmission was inadvertent. Therefore, the district court did not err in finding that the limitation of liability clause was a part of the contract between GTE and Tucker & Sons.

We next address the contention that the district court erred in finding that the limitation of liability clause was valid and enforceable. Tucker & Sons advances two arguments upon which it contends the provision should have been held void; first, the provision is contrary to public policy, and second, it is unconscionable. We address these arguments separately.

Whether a limitation of liability clause in a contract is void as contrary to public policy depends upon the facts and circumstances of the contract and the parties involved. *New Light Co. v. Wells Fargo Alarm Servs.,* 247 Neb. 57, 525 N.W.2d 25 (1994). We have defined "public policy" in this context as

> " ' "[t]hat principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good. * * * The principles under which the freedom of contract or private dealings is restricted by law for the good of the community.". . ' "

*Id.* at 63, 525 N.W.2d at 30 (quoting *OB-GYN v. Blue Cross,* 219 Neb. 199, 361 N.W.2d 550 (1985)). Accord *United Seeds, Inc. v. Hoyt,* 168 Neb. 527, 96 N.W.2d 404 (1959). Applying this definition in *New Light Co., supra,* we held that the "right of contract may be restricted for the public good" and that the "greater the threat to the general safety of the community, the greater the restriction on the party's freedom to contractually limit the party's liability." 247 Neb. at 63, 525 N.W.2d at 30. We have also held that a contractual provision should not be

declared void as contrary to public policy unless it is clearly and unmistakably repugnant to the public interest. *Bedrosky v. Hiner,* 230 Neb. 200, 430 N.W.2d 535 (1988); *Occidental Sav. & Loan Assn. v. Venco Partnership,* 206 Neb. 469, 293 N.W.2d 843 (1980); *Brisbin v. E. L. Oliver Lodge No. 335,* 134 Neb. 517, 279 N.W. 277 (1938).

In this case, there is no evidence that the limitation of liability clause posed any threat to the safety or welfare of the general public. Therefore, there is no basis for finding the clause void on public policy grounds.

Tucker & Sons urges us. to join those jurisdictions which have held that contracts for advertising in yellow pages are "contracts of adhesion" and that limitation of liability clauses contained in such contracts are unconscionable and, therefore, unenforceable, regardless of whether they affect public safety. See, e.g., *Pigman v. Ameritech Pub., Inc.,* 641 N.E.2d 1026 (Ind. App. 1994); *Rozeboom v. Northwestern Bell Telephone Co.,* 358 N.W.2d 241 (S.D. 1984). GTE, on the other hand, calls our attention to those jurisdictions which have held that similar clauses are not unconscionable. See, e.g., *McTighe v. New England Telephone and Telegraph Co.,* 216 F.2d 26 (2d Cir. 1954); *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 549 P.2d 903 (1976).

We conclude that it is unnecessary to reach the issue of unconscionability in this case because the record contains no evidence relating to this issue. We agree with the district court that the record contains no evidence of a disparity in the parties' respective bargaining positions, which is an essential fact upon which any determination of unconscionability depends. See, e.g., *Pigman, supra; Rozeboom, supra; Discount Fabric House v. Wis. Tel. Co.,* 117 Wis. 2d 587, 345 N.W.2d 417 (1984). For example, there is no evidence concerning the availability of yellow pages advertising from sources other than GTE, or the availability, relative cost, and efficacy of other types of advertising which Tucker & Sons could have utilized. Likewise, there is no evidence regarding whether Tucker & Sons ever attempted to negotiate the elimination of the limitation of liability clause in previous contracts.

The district court correctly concluded that it could not take judicial notice of the relative bargaining power of the parties. In

its petition, Tucker & Sons claimed that the limitation of liability clause was unconscionable because it "lacked equal bargaining power in the drafting of said clause, and lacked equal bargaining power in the negotiation of the terms and provisions of said clause." In its answer, GTE denied Tucker & Sons' allegation. The relative bargaining power of the parties was therefore a contested factual issue which could not have been the subject of judicial notice either in the district court or on appeal, since a court may not take judicial notice of disputed facts. See *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992). We therefore conclude that the district court did not err in finding that there was an inadequate factual basis upon which to find the limitation of liability clause unconscionable.

Finally, Tucker & Sons contends that the district court erred in overruling its motion for new trial. A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997); *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997). Based upon our review of the record, we conclude that the district court did not abuse its discretion in overruling Tucker & Sons' motion for new trial.

In summary, we conclude that each of Tucker & Sons' assignments of error is without merit and, therefore, affirm the judgment of the district court.

AFFIRMED.