Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/24/2016 09:09 AM CDT

THE CATTLE NATIONAL BANK & TRUST CO., APPELLEE, V.
ROBERT WATSON AND SHONA WATSON, APPELLEES, AND
BILL WATSON AND REBECCA WATSON, APPELLANTS.

THE CATTLE NATIONAL BANK & TRUST CO., APPELLEE, V.
ROBERT WATSON, APPELLANT AND CROSS-APPELLEE,
SHONA WATSON, APPELLEE AND CROSS-APPELLEE,
AND BILL WATSON AND REBECCA WATSON,
APPELLEES AND CROSS-APPELLANTS.

___ N.W.2d ___

Filed June 24, 2016.    Nos. S-15-512, S-15-872.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.

4. **Actions: Parties: Judgments: Appeal and Error.** Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) requires, in cases with multiple claims or parties, an explicit adjudication with respect to all claims or parties or, failing such explicit adjudication of all claims or parties, an express determination that there is no just reason for delay of an appeal of an order disposing of less than all claims or parties and an express direction for the entry of judgment as to those adjudicated claims or parties.

5. **Summary Judgment: Proof.** A party moving for summary judgment must make a prima facie case by producing evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

6. ____: ____. Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.

7. **Contracts: Guaranty: Debtors and Creditors: Words and Phrases.** A guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults.

8. **Contracts: Guaranty.** A guaranty is interpreted using the same general rules as are used for other contracts.

9. **Contracts: Guaranty: Appeal and Error.** To determine the obligations of the guarantor, an appellate court relies on general principles of contract and guaranty law.

10. **Guaranty: Liability.** When the meaning of a guaranty is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.

11. **Actions: Contracts: Guaranty.** A suit on a contractual guaranty presents an action at law.

12. **Actions: Parties.** The purpose of Neb. Rev. Stat. § 25-301 (Reissue 2008) is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.

13. **Actions: Parties: Standing.** The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.

14. ____: ____: ____. The purpose of the real party in interest inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.

15. **Declaratory Judgments.** In Nebraska, a party may not simply move the court for a declaratory judgment.

16. **Right to Counsel: Effectiveness of Counsel.** A self-represented litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel.

17. **Judgments: Garnishment: Jurisdiction.** A garnishment in aid of execution issued before judgment is without jurisdiction and void, and not merely irregular.

18. **Judgments: Debtors and Creditors.** An execution issued without a judgment to support it is void.

19. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

20. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.

21. **Final Orders: Appeal and Error.** There are three types of final orders that may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 2008): (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.

22. **Final Orders: Words and Phrases.** A substantial right under Neb. Rev. Stat. § 25-1902 (Reissue 2008) is an essential legal right.

23. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order form which an appeal is taken.

24. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Reissue 2008) include those legal rights that a party is entitled to enforce or defend.

25. **Summary Judgment: Claims: Garnishment.** An interlocutory order granting summary judgment on fewer than all of the claims in an action cannot serve as the judgment required for an execution or garnishment in aid of execution.

26. **Final Orders.** Since Neb. Rev. Stat. 25-1315(1) (Reissue 2008) is substantially similar to Fed. R. Civ. P. 54(b), federal cases construing rule 54(b) may be used for guidance in determining when a decision is a "final judgment" for purposes of § 25-1315(1).

27. **Appeal and Error.** Appellate courts do not generally consider arguments and theories raised for the first time on appeal.

28. **Judgments: Collateral Attack.** A void order may be attacked at any time in any proceeding.

Appeals from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Final orders in No. S-15-512 vacated. Judgment in No. S-15-872 affirmed.

Bill Watson and Rebecca Watson, pro se, in Nos. S-15-512 and S-15-872.

John M. Guthery, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee The Cattle National Bank & Trust Co., in Nos. S-15-512 and S-15-872.

Robert Watson, pro se, in No. S-15-872.

Justin J. Knight, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., and Michael C. Cox, of Koley Jessen, P.C., L.L.O., for appellee The Cattle National Bank & Trust Co., in No. S-15-872.

Heavican, C.J., Wright, Connolly, Cassel, and Kelch, JJ.

Cassel, J.

## I. INTRODUCTION

A bank's action against four guarantors on their respective personal guaranties of an entity's debts has generated three appeals by various guarantors. The first appeal was taken after the district court granted the bank's motions for summary judgment but failed to adjudicate a cross-claim. The second appeal was taken from execution and garnishment proceedings that occurred while the first appeal was pending. Because of the undisposed cross-claim, the Nebraska Court of Appeals dismissed the first appeal. One guarantor then moved to vacate the summary judgment order. The district court denied the motion and simultaneously dismissed the pending cross-claim. The third appeal followed. We consider it first.

The third appeal raises three issues. First, were the guarantors bound by the second page of the document? They were, because the first page incorporated the second page and defined "Undersigned" to include them. Second, can a guarantor assert defenses arising from the entity's underlying debt? For various reasons, he cannot. Finally, did the district court err in failing to vacate the summary judgment order? Because the guarantor conflated the order's initial lack of finality with its validity, the court correctly overruled the motion. In the third appeal, we affirm the district court's judgment.

In the second appeal, the guarantors now argue a new ground—that the execution and garnishment proceedings were void because they were commenced prior to judgment. Although the interlocutory order granting summary judgment motions was not void, it was not a "judgment" sufficient to support execution or garnishment in aid of execution. The interlocutory order ultimately became part of a judgment. But this did not validate the void process. We therefore vacate the void execution and garnishments.

## II. BACKGROUND

### 1. Guaranties

The action proceeded against four members of the Watson family—Robert Watson, Shona Watson, Bill Watson, and Rebecca Watson (collectively the Watsons). Robert, Shona, and Rebecca were members of Reserve Design, LLC (Reserve), a construction business. In 2007, the Watsons signed identical personal guaranties for the debts that Reserve owed to The Cattle National Bank & Trust Co. (Bank). The guaranties expressly included Reserve's future indebtedness.

Each of the guaranties consisted of a single sheet of paper with print on both sides. The pages were labeled "page 1 of 2" and "page 2 of 2." The Watsons' signatures appear at the bottom of page 1, and there is no dispute that they signed page 1. Although page 2 included what appear to be lines for initials, none of the Watsons initialed or otherwise signed page 2.

Several provisions on page 1 are relevant. First, a definition stated: "'Undersigned' shall refer to all persons who sign this guaranty, severally and jointly." This definition appeared immediately below the last signature line and within its width. The term "Undersigned," appearing in the same initially capitalized form, was used throughout the document. Second, a provision on the first page stated:

> [T]he Undersigned guarantees to [the Bank] the payment and performance of each and every debt, liability and obligation of every type and description which [Reserve]

may now or at any time hereafter owe to [the Bank] (whether such debt, liability or obligation now exists or is hereafter created or incurred[)].

Third, the first page provided that the liability of "the Undersigned" was "UNLIMITED." Finally, page 1 stated, in bold type: "This guaranty includes the additional provisions on page 2, all of which are made a part hereof."

Page 2 consisted of eight additional provisions. One pertained to the waiver of defenses. It stated, in relevant part:

> The Undersigned waives any and all defenses, claims and discharges of [Reserve], or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against [the Bank] any defense of . . . fraud . . . which may be available to [Reserve] or any other person liable in respect of any Indebtedness . . . .

Another provided that the Bank could "enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned."

## 2. Loan

In 2010, 3 years after the guaranties had been given to the Bank, the Bank loaned Reserve $40,000 (loan). Robert signed a loan agreement on behalf of Reserve as "Rob Watson, Manager." And he extended the loan's maturity date on three later occasions, signing each extension as "Rob Watson, Manager." Robert claims that the Bank's loan officer promised him that if he signed the loan on behalf of Reserve, the officer would later rewrite it as a third mortgage for Robert's personal residence. The loan was never rewritten as Robert's personal obligation.

In 2012, Reserve failed to make a required payment on the loan, and the Bank declared default and demanded payment from the Watsons on the guaranties. The Watsons refused to

pay. The Bank filed a complaint for breach of guaranty, naming the Watsons as defendants.

Robert's amended answer included a counterclaim for fraud in the inducement. He claimed that he was fraudulently induced to sign the loan in his capacity as manager of Reserve. He also claimed that he was not bound by the terms on page 2 of the guaranty, because he did not "undersign" it. Bill and Rebecca's answer asserted numerous defenses, but it did not assert the absence of signatures or initials on page 2. Shona's answer included a cross-claim against Robert.

### 3. Summary Judgment

Robert and the Bank each filed motions for summary judgment as to the breach of guaranty claims and Robert's counterclaim. One of Robert's motions included a motion "for Declaratory Judgment on contractual effect of Personal Guarantees."

The district court sustained the Bank's motions and overruled Robert's motions in an October 17, 2014, order (hereinafter summary judgment order). Regarding the Bank's claims for breach of guaranty, it observed that there was no dispute that the Watsons all signed the guaranties for the debt of Reserve. And it noted that the guaranties provided that the Bank could enter transactions resulting in the creation or continuance of indebtedness without the Watsons' notice or approval.

Regarding Robert's counterclaim for fraud in the inducement, the court first concluded that Robert was not a real party in interest, because Reserve and the Bank were the only two parties to the loan agreement. Therefore, because Reserve was not a party to the action, Robert could not raise a claim for fraud on its behalf. Second, it concluded that even if Reserve was a party to the action, the defense of fraud in the inducement was not available to the Watsons, because it was waived under the terms on page 2. Finally, the court concluded that Robert's motion for a declaratory judgment was improper, because the request was not made in the pleadings.

The court entered "judgment" for the Bank "against the [Watsons] jointly and severally in the amount of $30,000 plus interest of $1,839.45." The summary judgment order did not address Shona's cross-claim against Robert, and it did not direct the entry of final judgment pursuant to Neb. Rev. Stat. § 25-1315 (Reissue 2008).

Robert, Bill, and Rebecca filed the first appeal. It was docketed in the Court of Appeals as case No. A-14-1028.

### 4. EXECUTION AND GARNISHMENT

While the first appeal was pending, the Bank apparently filed requests for writs of execution and garnishment, but its requests are not in our record. The district court appears to have issued the requested writs, but they, too, are not in our record. In response, Robert and Bill filed objections to garnishment and Bill and Rebecca filed an objection to execution. These filings are also not in our record.

The court overruled the objections in two June 8, 2015, orders, which are in our record. One concluded that the Bank could proceed with the garnishments, because Robert and Bill failed to show that they did not owe the debts in question. And the other concluded that the Bank could proceed with the execution, because Bill and Rebecca made no showing that their property was exempt. According to the bill of exceptions, there was no discussion at the hearing regarding whether the summary judgment order was appealable or whether it was a "judgment" sufficient to support a writ of execution or garnishment.

Bill and Rebecca quickly filed the second appeal. It is docketed in this court as case No. S-15-512. Although the parties argue that an execution sale of a vehicle owned by Bill and Rebecca took place after June 8, 2015, neither the writ of execution nor any return of the writ is included in our record.

To the extent shown in our record, the events that followed are summarized below:

• July 8, 2015: Court of Appeals dismissed the first appeal, concluding that the summary judgment order was not final and appealable, because Shona's cross-claim against Robert was still pending.
• July 17, 2015: Robert filed motion in district court to vacate the summary judgment order.
• August 25, 2015: District court dismissed Shona's cross-claim and overruled Robert's motion to vacate.
• September 17, 2015: Robert filed notice of the third appeal, which was taken from the summary judgment order and the order overruling his motion to vacate. The third appeal is docketed in this court as case No. S-15-872.
• September 18, 2015: Bill and Rebecca filed a notice of appeal from the summary judgment order. Our clerk treated this as a second notice of appeal[1] in the third appeal.

We moved the second and third appeals to our docket,[2] and we consolidated them for argument and disposition.

## III. ASSIGNMENTS OF ERROR

### 1. Second Appeal (No. S-15-512)

Bill and Rebecca assign that the district court erred by "[i]ssuing an order to execute and garnish on the statutorily deficient" summary judgment order.

### 2. Third Appeal (No. S-15-872)

Robert assigns, restated and consolidated, that the district court erred in (1) finding that there was no genuine issue of material fact regarding whether he is bound by the terms on page 2, (2) failing to consider his defense of fraud, (3) failing to find that the Bank has unclean hands, (4) finding that he was not a real party in interest in his counterclaim, (5) failing to consider his request for a declaratory judgment, and (6) failing to vacate the summary judgment order after the Court

---

[1] See Neb. Ct. R. App. P. § 2-101(C) (2014).

[2] Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

of Appeals, in Robert's words, "found the [o]rder was statutorily insufficient and non-final."

On cross-appeal, Bill and Rebecca assign that the district court erred in (1) finding that there was no genuine issue of material fact regarding whether they were bound by the provisions on page 2 of the guaranty, (2) not finding that the Bank was required to give them "notice of further obligation under the personal guaranties," and (3) finding that they are obligated on the loan, even though they were not notified of it.

## IV. STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[4]

[3] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[5]

## V. ANALYSIS

### 1. Third Appeal (No. S-15-872)

Because the third appeal reaches the merits of the summary judgment order, we address it first. In both Robert's appeal and Bill and Rebecca's cross-appeal, they contend that there

---

[3] *Waldron v. Roark*, 292 Neb. 889, 874 N.W.2d 850 (2016).

[4] *Id.*

[5] *Braunger Foods v. Sears*, 286 Neb. 29, 834 N.W.2d 779 (2013).

was a genuine issue of material fact regarding whether they were bound by the provisions on page 2. Robert also attacks the summary judgment order on other grounds and appeals from the denial of his motion to vacate the summary judgment order.

### (a) Jurisdiction

We have jurisdiction of the third appeal. Although nearly a year had expired after the entry of the summary judgment order, it did not become final or appealable until the dismissal of Shona's cross-claim.

[4] We have made it clear that § 25-1315(1) requires, in cases with multiple claims or parties, an explicit adjudication with respect to all claims or parties or, failing such explicit adjudication of all claims or parties, an express determination that there is no just reason for delay of an appeal of an order disposing of less than all claims or parties and an express direction for the entry of judgment as to those adjudicated claims or parties.[6]

Despite its terminology, the summary judgment order was not a "judgment," because it failed to adjudicate the cross-claim. And the order clearly does not include the language which might have purported to authorize an immediate appeal.[7] When the district court dismissed Shona's cross-claim, its series of orders formed a judgment—taken together, these orders finally determined the rights of the parties in the action.[8] Only then did the appeal time begin to run on the summary judgment order. And Robert's appeal was clearly timely.

---

[6] *Malolepszy v. State*, 270 Neb. 100, 699 N.W.2d 387 (2005).

[7] See § 25-1315(1). See, also, *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007) (power should be used only in infrequent harsh case, based on likelihood of injustice or hardship to parties of delay in entering final judgment as to part of case).

[8] See Neb. Rev. Stat. § 25-1301(1) (Reissue 2008) (judgment is final determination of rights of parties in action).

### (b) Summary Judgment

[5,6] A party moving for summary judgment must make a prima facie case by producing evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.[9] Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.[10]

### (i) Bill and Rebecca

All of Bill and Rebecca's assigned errors and corresponding arguments are based on their contention that because they did not sign page 2, they did not agree to the provisions on that page. Their first assignment argues generally that they did not agree to page 2, and their second and third assignments argue specifically that they are not bound by the waiver of notice provision on page 2.

The Bank argues we cannot address Bill and Rebecca's assigned errors, because they did not raise the issue in their answer. The pleadings frame the issues to be considered on a motion for summary judgment.[11] And an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[12]

The Bank may be technically correct regarding the effect of Bill and Rebecca's answer, but, for two reasons, it makes no significant difference. First, they did allege that the Bank failed to properly notify them of the loan. That allegation raised the issue of whether the Bank was required to give them notice, which in turn depends upon the enforceability of the waiver of notice on page 2.

---

[9] *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 748 N.W.2d 645 (2008).

[10] *Id.*

[11] *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

[12] *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014).

But more important, Robert argues in his first assignment of error that there is a genuine issue of material fact regarding whether he agreed to page 2. He explicitly raised this issue in his amended answer below. Thus, Robert's first assignment of error squarely presents the issue.

### (ii) Terms of Guaranty

Robert, Bill, and Rebecca argue that in order to agree to the provisions on page 2, they had to "undersign" page 2. They rely upon the term's ordinary meaning but ignore the definition of "Undersigned" on page 1. Their argument fails.

[7-9] A guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults.[13] A guaranty is interpreted using the same general rules as are used for other contracts.[14] To determine the obligations of the guarantor, an appellate court relies on general principles of contract and guaranty law.[15]

[10] But when the meaning of a guaranty is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.[16] And that is the situation here.

The district court correctly concluded that the provisions on page 2 were part of the guaranty. Robert, Bill, and Rebecca do not dispute that they signed page 1, which provided, in bold type, that "[t]his guaranty includes the additional provisions on page 2, all of which are made a part hereof." This language clearly and absolutely applied to make the terms on page 2 part of the contract.

We have previously rejected similar arguments. In one case, the front of the contract at issue had a place for a signature, and immediately beneath the signature line, the following

---

[13] *Braunger Foods v. Sears, supra* note 5.

[14] *Id.*

[15] *Id.*

[16] *Id.*

was printed: "'NOTE: SEE REVERSE SIDE FOR TERMS AND CONDITIONS OF LEASE. ALL WARRANTIES DISCLAIMED.'"[17] We concluded that the defendant was bound by the provisions on the reverse side of the contract. In another case, the defendant signed the front of the contract, which provided that he "'purchase[d], subject to the terms and conditions set forth below and upon the reverse side hereof.'"[18] The defendant "ignor[ed] the import of the words 'and upon the reserve side hereof'" and argued that the terms on the front of the contract controlled.[19] We rejected the defendant's approach and stated that "[o]bviously, the provisions on the reverse side of the contract, except as they may be unenforceable in this state, are a part of the contract and must be so considered."[20] We reached the same conclusion in yet another case.[21] There, the plaintiff signed the front of the contract, which included "a specific and conspicuous reference to the limitation of liability clause on the reverse side of the document."[22] But because of an error in transmission, the plaintiff did not receive the reverse side of the contract that contained the limitation of liability clause until 3 days after it signed the front. We concluded that the plaintiff "was clearly placed on notice that the clause was intended to be included in the contract" and that the clause was therefore part of the agreement.[23]

Applying our prior decisions to the facts of this case, it is clear that the statement on page 1 that "[t]his guaranty

---

[17] *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 3, 443 N.W.2d 596, 599 (1989).

[18] *General Motors Acceptance Corp. v. Blanco*, 181 Neb. 562, 564, 149 N.W.2d 516, 518 (1967) (emphasis omitted).

[19] *Id.* at 566, 149 N.W.2d at 519.

[20] *Id.*

[21] *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997).

[22] *Id.* at 464, 571 N.W.2d at 69.

[23] *Id.*

includes the additional provisions on page 2, all of which are made a part hereof" was sufficient to incorporate the provisions on page 2 into the contract. Page 2 was part of the guaranty, and Robert, Bill, and Rebecca are bound by its provisions.

Robert, Bill, and Rebecca's arguments regarding the general meaning of the term "Undersigned" do not change the outcome. They note that the provisions on page 2 refer to "the Undersigned," and they argue that because they did not "undersign" page 2, none of its provisions apply to them. They rely upon general law defining "undersigned" as "[s]omeone whose name is signed on a document, esp. at the end."[24]

Their arguments fail, because the definition of "Undersigned" on page 1 controls. Immediately below the signature lines on page 1 appears the following definition: "'Undersigned' shall refer to all persons who sign this guaranty, severally and jointly." Four signature lines were printed. The second line had the same width as the first and was placed immediately below it. The third and fourth lines followed in like manner. The definition was placed within the width of the last signature line and immediately below it. To any ordinary reader, this content and placement made it plain that by signing on one of the lines on page 1, they were expressly included within the definition of "Undersigned." And on their respective guaranties, that was exactly where Robert, Bill, and Rebecca signed. Throughout pages 1 and 2, the word "Undersigned" always appears in the same initially capitalized form as the definition. This also conveys to an ordinary reader that the same meaning applies to the term throughout the document. Clearly, the meaning of "Undersigned" on both pages is controlled by the definition on page 1. Robert, Bill, and Rebecca all signed the guaranty, and therefore, they constitute "the Undersigned" despite having not signed or initialed page 2.

---

[24] Black's Law Dictionary 1758 (10th ed. 2014).

Because page 2 was part of the guaranty, all of Bill and Rebecca's assignments of error lack merit. We turn to the additional issues raised in Robert's appeal.

### (iii) Defense of Fraud

In this assignment, Robert asserts that the court failed to consider his affirmative defense that he was fraudulently induced to sign the loan document regarding the Bank's loan to Reserve. And he argues that the court should have found that the loan agreement was unenforceable because of the alleged fraud. At oral argument, he reiterated that he was not asserting any fraud with respect to the guaranty. The court did not specifically address this defense in its order, but it did state that "no issues of material fact exist with reference to any of [the Watsons'] defenses."

Because Robert waived all defenses belonging to Reserve, the court correctly concluded that there is no genuine issue of material fact as to this defense. The guaranty provided, in relevant part: "The Undersigned waives any and all defenses, claims and discharges of [Reserve] . . . . Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against [the Bank] any defense of . . . fraud . . . which may be available to [Reserve] . . . ." The terms of the guaranty are clear, and Robert cannot assert a defense that he expressly waived.[25] This assignment is meritless.

### (iv) Unclean Hands

Robert claims that the district court should have concluded that the Bank has unclean hands, because it fraudulently induced him to sign the loan agreement. This formulation also lacks merit.

---

[25] See, 38A C.J.S. *Guaranty* § 125 (2008); *Gateway Companies, Inc. v. Vitech America, Inc*. 33 Fed. Appx. 578, 580 (2d Cir. 2002) (observing that "[w]hen guarantors have specifically disclaimed all defenses to the enforcement of their guaranty, they are not allowed thereafter to raise a defense of fraud in the inducement").

Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue.[26] The doctrine is specifically predicated upon equitable rights, and is enforceable against a party seeking equitable relief.[27]

[11] But a suit on a contractual guaranty presents an action at law, not in equity.[28] The doctrine of unclean hands has no application here. This assignment is meritless.

### (v) Counterclaim

Robert claims that in granting the Bank's motion for summary judgment as to his counterclaim for fraudulent inducement, the district court erred in finding that he was not a real party in interest. We disagree.

[12-14] Nebraska's real party in interest statute provides that "[e]very action shall be prosecuted in the name of the real party in interest . . . ."[29] The purpose of that section is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.[30] The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.[31] The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.[32]

Robert is not a real party in interest to prosecute the fraudulent inducement claim, because the claim belongs to Reserve.

---

[26] *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007).

[27] *Id.*

[28] See *Stauffer v. Benson*, 288 Neb. 683, 850 N.W.2d 759 (2014).

[29] Neb. Rev. Stat. § 25-301 (Reissue 2008).

[30] *Manon v. Orr*, 289 Neb. 484, 856 N.W.2d 106 (2014).

[31] *Id.*

[32] *Id.*

He signed the loan agreement on behalf of Reserve, in his capacity as manager of Reserve. Reserve, not Robert, was obligated under the loan agreement. Robert was not a party to the loan agreement, and he had no legally protectable interest or right in the controversy that would benefit by the relief to be granted.

And for several reasons, Robert cannot prosecute the claim on behalf of Reserve. First, Reserve is not a party in this case. Second, Reserve is a limited liability company, which is an entity distinct from its members.[33] Robert, who is not an attorney, may not represent Reserve in courts of this state.[34] Finally, as we explained earlier, Robert's personal guaranty expressly waived any claim of fraud belonging to Reserve.

Because Robert is not the real party in interest in his counterclaim, there is no genuine issue of material fact, and the Bank was entitled to judgment as a matter of law as to Robert's counterclaim.

### (vi) Declaratory Judgment

Robert filed a motion "for Declaratory Judgment on contractual effect of Personal Guarantees," together with a motion for summary judgment as to the Bank's complaint. He assigns that the district court erred in overruling his motion for a declaratory judgment and argues that the court should have considered it to be part of his motion for summary judgment. The district court declined to address the motion, because Robert did not make the request for declaratory judgment in his pleadings.

[15] The district court did not err in declining to address Robert's motion for declaratory judgment. In Nebraska, a party may not simply move the court for a declaratory judgment.[35]

---

[33] *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

[34] See *id.*

[35] *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

No such summary proceeding is recognized in Nebraska.[36] The same case makes it clear that an action for declaratory judgment is framed by a pleading,[37] and Robert's counterclaim did not make any attempt to do so.

To the extent that Robert argues the matter was encompassed in his motion for summary judgment, we find no merit to his argument. The court considered and overruled his motion for summary judgment. It therefore resolved Robert's rights under the contract, which was the issue he sought to have determined in his "motion" for declaratory judgment.

The district court did not err in granting the Bank's motion for summary judgment as to its claims for breach of guaranty and as to Robert's counterclaim. It also did not err in overruling Robert's motions for summary judgment and declaratory judgment. Accordingly, we affirm the district court's summary judgment order.

### (c) Failure to Vacate

Finally, Robert assigns that the district court erred in overruling his motion to vacate the summary judgment order. He argues that the district court should have vacated the order, because "§ 25-1315(1) . . . requires a non-final order to be written in such a way it can be modified. The . . . order was not written to include or consider the effect of future rulings in the matter and therefore must be vacated."[38]

We digress to note that Robert's motion to vacate addressed only the summary judgment order. Thus, his motion did not address the orders overruling objections to execution or garnishments. Because Robert limited his motion in that way, the district court was not asked to vacate these other orders. An issue not presented to or passed on by the trial court is not

---

[36] *Id.*

[37] See *id*.

[38] Brief for appellant in case No. S-15-872 at 39.

appropriate for consideration on appeal.[39] Thus, in considering this assignment of error, we are limited by the scope of Robert's motion.

Robert relies on *Murry Constr. Servs. v. Meco-Henne Contracting*[40] to support his argument. In that case, the Nebraska Court of Appeals stated: "It is our duty to dismiss appeals for lack of jurisdiction and to direct the trial court to expunge from its records actions or orders which are not valid."[41]

Robert's reliance on *Murray Constr. Servs.* is misplaced. The rule in that case applies when an order is invalid under § 25-1301, which requires that a judgment be signed by the court and file stamped and dated by the clerk of the court. Here, the Court of Appeals did not conclude that the summary judgment order was invalid under § 25-1301. Rather, it concluded that it lacked jurisdiction because the summary judgment order did not adjudicate the cross-claim and, thus, did not constitute a final judgment under § 25-1315(1). *Murray Constr. Servs.* does not affect the validity of the summary judgment order.

The summary judgment order was not invalid. Rather, as we explained above, at the time of the first appeal, the summary judgment order simply was not yet part of a judgment and, thus, was not yet appealable. Therefore, we affirm the district court's order overruling Robert's motion to vacate the summary judgment order.

## 2. SECOND APPEAL (NO. S-15-512)

[16] Bill and Rebecca filed this appeal from the district court's orders overruling their objections to execution and garnishments. Although they appeared with counsel before the

---

[39] *Aldrich v. Nelson*, 290 Neb. 167, 859 N.W.2d 537 (2015).

[40] *Murray Constr. Servs. v. Meco-Henne Contracting*, 10 Neb. App. 316, 633 N.W.2d 915 (2001).

[41] *Id.* at 318, 633 N.W.2d at 916.

district court, they are self-represented in this court. We have frequently stated that a self-represented litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel.[42]

Bill and Rebecca argue that the district court erred in overruling their objections, because "[a]ny order issued for enforcement of a statutorily deficient non-appealable, non-final order is invalid and void."[43] Their argument lacks some precision. But as we understand it, they argue that because the summary judgment order was not a "judgment" within the meaning of § 25-1315, the execution and garnishments were void. They did not raise this argument below.

(a) General Law on Premature
Execution or Garnishment

[17] We have long held that a garnishment in aid of execution issued before judgment is without jurisdiction and void, and not merely irregular.[44] These cases arose under an earlier version of what is now codified as Neb. Rev. Stat. § 25-1056 (Reissue 2008), which governs garnishments after judgment.[45] The garnishment proceeding must be supported by a "judgment *in esse*,"[46] that is, a judgment "[i]n actual existence" or, literally, "in being."[47] Thus, the judgment must be in existence before a garnishment in aid of execution. And even if there is a judgment which is later reversed, the "garnishment becomes

---

[42] See, e.g., *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015) (referring to self-represented litigant as "pro se litigant").

[43] Brief for appellants in case No. S-15-512 at 2.

[44] See, *Whitcomb v. Atkins*, 40 Neb. 549, 59 N.W. 86 (1894); *Clough v. Buck*, 6 Neb. 343 (1877).

[45] See *id.*

[46] See *Clough v. Buck, supra* note 44, 6 Neb. at 347 (emphasis in original).

[47] Black's Law Dictionary 895 (10th ed. 2014).

wholly dissolved, for there is nothing left to support either the one or the other."[48]

[18] Although we have not found a Nebraska case directly on point, it appears that the same rule applies to an execution issued without a judgment. The general rule, in the absence of a statutory provision to the contrary, is that an execution issued without a judgment to support it is void.[49] The Arizona Supreme Court stated that "an execution issued without a judgment to support it is void, no authority is conferred upon the officer to whom it is directed, and even if a judgment is subsequently obtained, it will not have a retroactive effect so as to validate the execution."[50] And a Missouri court recited its law that "'[e]nforcement of a judgment by execution supposes that the judgment is not merely interlocutory, but final.'"[51] This rule seems consistent with our statutes.[52] And we have held that a proceeding in aid of a satisfied judgment was a nullity.[53]

It seems clear that before enactment of § 25-1315, the summary judgment order would have been considered a judgment as between the Bank and the Watsons. *Federal Land Bank v. McElhose*[54] is instructive despite its reliance upon

---

[48] *Clough v. Buck, supra* note 44, 6 Neb. at 347.

[49] 30 Am. Jur. 2d *Executions* § 55 (2005).

[50] *Jackson v. Sears, Roebuck and Co.*, 83 Ariz. 20, 21-22, 315 P.2d 871, 872 (1957).

[51] *State ex rel. Lumber Mut. Ins. Co. v. Ohmer*, 131 S.W.3d 872, 874 (Mo. App. 2004).

[52] See, § 25-1056 (when judgment has been entered and creditor has filed affidavit, garnishment summons shall issue); Neb. Rev. Stat. § 25-1501.01 (Cum. Supp. 2014) (person having judgment rendered by district court may request clerk of court to issue execution); Neb. Rev. Stat. § 25-1504 (Reissue 2008) (land and tenements in county bound for satisfaction of judgment when entered on judgment record, goods and chattels bound from seizure in execution).

[53] *Yeiser v. Cathers*, 73 Neb. 317, 102 N.W. 612 (1905).

[54] *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986).

obsolete procedures for rendition and entry of judgment. A first pronouncement, followed by a trial docket entry on the same day, "finally determined the rights of the parties and constituted the rendition of a [judgment]."[55] We held that this judgment was final and appealable despite the later entry of another judgment that partially contradicted the first judgment. We observed that the "confusion presented by this case can be avoided if trial courts will, as they should, limit themselves to entering but one final determination of the rights of the parties in a case."[56] And to deal with another aspect of the multiple judgments problem, we later stated that a trial court should defer entering a default judgment against one of multiple defendants where doing so could result in inconsistent and illogical judgments following determination on the merits as to the defendants not in default.[57] And in that case, we overruled two older cases permitting default judgments to stand against one jointly liable defendant while another defendant was adjudged not liable after a trial. The Legislature adopted § 25-1315 at the next session after that case was decided.

### (b) Appellate Jurisdiction

[19] But before we can consider whether the adoption of § 25-1315 leads to the conclusion that Bill and Rebecca advance, we must consider whether we have jurisdiction over the second appeal. Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[58] And the question of our jurisdiction is not a simple matter.

---

[55] *Id*. at 451, 384 N.W.2d at 297.

[56] *Id*. at 452, 384 N.W.2d at 298.

[57] *State of Florida v. Countrywide Truck Ins. Agency*, 258 Neb. 113, 602 N.W.2d 432 (1999).

[58] *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

[20] For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.[59] Our jurisdiction depends upon the proper classification of the orders overruling objections to execution and garnishment.

We are hampered somewhat by the state of the record. It does not include any praecipes for execution or garnishment, any writs of execution or garnishment, or any returns to any such writs. Thus, all we can discern from the record is that such writs were issued prior to the entry of judgment. At the hearing on the objections, the parties' arguments appear to be premised upon a belief that the summary judgment order was susceptible of execution or garnishment. But that hearing took place before the Court of Appeals dismissed the first appeal.

It is clear that the second appeal was not taken from a final judgment. We have already determined that the district court's series of orders did not form a judgment until it dismissed Shona's cross-claim in August 2015, more than 2 months after Bill and Rebecca filed their notice of appeal in the second appeal. And their notice of appeal did not relate forward to the August entry of judgment.[60] We turn to the other possibility—a final order.

[21] Our jurisdiction depends upon whether the June 8, 2015, orders were "final orders." Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action

---

[59] *State v. Jackson*, 291 Neb. 908, 870 N.W.2d 133 (2015).

[60] See *In re Guardianship & Conservatorship of Woltemath*, 268 Neb. 33, 680 N.W.2d 142 (2004).

after a judgment is rendered.[61] For convenience, we refer to these as type "1," "2," or "3" orders. Each type requires that the order affect a substantial right. The difference lies in the type of proceeding or its effect upon the action.

We have not always used this terminology with precision. For example, in one case, we said that an order overruling an objection to a debtor's examination was "made in a special proceeding."[62] But we also said that the order was "made upon a summary application in an action after judgment therein."[63] Thus, we intermingled terminology from types 2 and 3. We perpetuated this confusion in a later case.[64]

One thing is clear—the orders overruling objections to execution and garnishments were not type 1 final orders. To be a type 1 final order, it must dispose of the whole merits of the case and leave nothing for the court's further consideration.[65] These orders did neither. They occurred prior to judgment. And they did not prevent the judgment, which followed upon the dismissal of the cross-claim.

We conclude that we must classify the proceedings before the district court as summary applications in an action after judgment is rendered. Thus, it would necessarily follow that the district court's orders would be type 3 final orders. The anomaly, of course, is that no "judgment" had actually been rendered. Nonetheless, the Bank was pursuing an execution and a garnishment in aid of execution, both of which necessarily follow a judgment.

---

[61] *State v. Harris*, 292 Neb. 186, 871 N.W.2d 762 (2015).

[62] *Clarke v. Nebraska Nat. Bank*, 49 Neb. 800, 802, 69 N.W. 104, 104 (1896).

[63] *Id.*

[64] *Bourlier v. Keithley*, 141 Neb. 862, 865, 5 N.W.2d 121, 123 (1942) ("[a] proceeding in aid of execution is a special proceeding made upon a summary application in an action after judgment").

[65] See *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

[22-24] And the orders affected substantial rights. A substantial right under § 25-1902 is an essential legal right.[66] A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[67] The orders eliminated the Watsons' objections to the execution and garnishments. Moreover, substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend.[68] The execution and garnishments authorized the seizure of property or money that would otherwise have remained in the Watsons' ownership and control. Thus, the orders affected a substantial right.[69]

Because the second appeal was timely filed after the entry of the orders overruling objections to execution and garnishments, we have jurisdiction of the second appeal.

### (c) Validity of Orders on Execution and Garnishments

Having concluded that we have jurisdiction of the second appeal, we turn to the dispositive issue. The execution and garnishments in aid of execution were issued prior to a final judgment under §§ 25-1301 and 25-1315. We conclude that these execution and garnishment proceedings were void.

The key is the second sentence of § 25-1315(1), which states:

In the absence of such determination [that there is no just reason for delay] and direction [for the entry of

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] See *In re Estate of McKillip*, 284 Neb. 367, 375, 820 N.W.2d 868, 876 (2012) (concluding that "the rights of the devisees to retain the real estate in kind is a substantial right that is affected by the order to sell the property").

judgment], *any order or other form of decision, however designated*, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the *order or other form of decision* is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis supplied.) Most of our cases involving § 25-1315 have addressed attempts to invoke the authority granted by the first sentence.[70] Here, we confront a form of decision characterized as a judgment but which failed to dispose of a defendant's cross-claim.

The pending cross-claim prevented the summary judgment order from serving as a final judgment. We have previously written in depth regarding the purpose of the statute with regard to the "'salutary goal of certainty with respect to jurisdiction of appeals.'"[71]

[25] It seems equally fundamental that an interlocutory order granting summary judgment on fewer than all of the claims in an action cannot serve as the judgment required for an execution or garnishment in aid of execution. The plain language of § 25-1315(1) makes it clear that the form of the order cannot control. Here, the summary judgment order stated that "[j]udgment is entered in favor of the [Bank and] against the [Watsons] jointly and severally . . . ." The statute requires explicit adjudication of all of the claims and of all of the rights and liabilities of all of the parties. The summary judgment order did not do so.

---

[70] See, e.g., *Castellar Partners v. AMP Limited*, 291 Neb. 163, 864 N.W.2d 391 (2015); *Cerny v. Todco Barricade Co., supra* note 7; *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001).

[71] *Malolepszy v. State, supra* note 6, 270 Neb. at 106, 699 N.W.2d at 391 (quoting *Federal Sav. & Loan Ins. Corp. v. Huff*, 851 F.2d 316 (10th Cir. 1988)).

The same purpose of providing certainty applies to a judgment which will be sufficient to support the issuance of final process. A writ of execution is recognized as a final process of a court for the enforcement of a judgment.[72] If an interlocutory order remains subject to change, it cannot support the court's final process. The officers required by law to execute a court's process need certainty that the process is supported by a final judgment. And this clarity is equally important to the parties and the general public.

[26] We have not found any federal cases suggesting otherwise. Since § 25-1315(1) is substantially similar to Fed. R. Civ. P. 54(b) (Rule 54(b)), we will look to federal cases construing Rule 54(b) for guidance.[73] In a case from the District of Columbia Circuit, a party was "confronted by a judgment non-final in terms of Rule 54(b) but ostensibly the predicate for an execution."[74] The court observed that "[a]n execution ordinarily may issue only upon a final judgment,"[75] and it said: "We think the role Rule 54(b) plays with reference to the finality of a judgment for purposes of appeal has implications as regards its finality for purposes of execution as well."[76] It noted that the lower court had not made a Rule 54(b) determination, and it stated that "the more likely conclusion upon the merits of the appeal is that unless and until [the Rule 54(b) determination] is done [the appellee] has no judgment upon which an execution may issue prior to adjudication of the case in its entirety."[77] It therefore denied the appellee's motion for

---

[72] See *State, ex rel. Warren, v. Raabe*, 140 Neb. 16, 299 N.W. 338 (1941).

[73] *Bailey v. Lund-Ross Constructors Co.*, 265 Neb. 539, 657 N.W.2d 916 (2003).

[74] *Redding & Company v. Russwine Construction Corporation*, 417 F.2d 721, 724 (D.C. Cir. 1969).

[75] *Id.* at 727.

[76] *Id.*

[77] *Id.*

a supersedeas bond as a condition of the stay of execution issued during the pendency of the appeal.[78] In another case, a Second Circuit court noted that "the validity of [an] execution order . . . depends upon the finality of the earlier default judgments which that execution order is intended to satisfy."[79] Because the order was susceptible of two interpretations, one consistent with finality and the other not, the court remanded the matter for entry of a new judgment.[80]

Although we have read the district court's orders together in order to determine the existence of a final judgment, this should not be necessary. Where a series of orders, taken together, would constitute a final judgment, we encourage the trial courts to make the judgment explicit in the last order of the series.

[27,28] Although Bill and Rebecca did not raise this precise argument before the district court, we conclude that we can consider it. Appellate courts do not generally consider arguments and theories raised for the first time on appeal.[81] But it is a longstanding rule in Nebraska that a void order may be attacked at any time in any proceeding.[82] We have already recited the case law making it clear that executions and garnishments in aid of execution issued prior to judgment are void. The district court's orders overruling objections to the void orders are likewise void. The summary judgment order was then only an interlocutory order. At that time, it did not

---

[78] See, also, *Gerardi v. Pelullo*, 16 F.3d 1363 n.13 (3d Cir. 1994) (noting that "a judgment that is not otherwise final, *i.e.*, usually meaning final as to all issues and parties, is not subject to execution until the certification under Rule 54(b) is entered").

[79] *International Controls Corp. v. Vesco*, 535 F.2d 742, 745 (2d Cir. 1976).

[80] *International Controls Corp. v. Vesco, supra* note 79.

[81] *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

[82] See, *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996); *Lammers Land & Cattle Co. v. Hans*, 213 Neb. 243, 328 N.W.2d 759 (1983).

support the issuance of final process, and Bill and Rebecca could raise this issue for the first time on appeal.

Based on the record before us in the second appeal, we determine that the writs of execution and garnishment issued before the entry of a final judgment, and the proceedings had for their enforcement, were void. We therefore vacate the final orders overruling the Watsons' objections to execution and garnishments.

But that is the full extent of the relief we can provide on this record. In our decision regarding the Watsons' third appeal, we have affirmed a judgment sufficient for the issuance of final process. As we have already explained, the later judgment does not have a retroactive effect to validate the void writs of execution and garnishment. We express no opinion regarding any action or process available to the Watsons regarding the void execution and garnishments, or regarding the effect, if any, of the Bank's later judgment on such action or process.

## VI. CONCLUSION

For the reasons discussed above, in case No. S-15-872, we affirm the district court's order granting the Bank's motions for summary judgment as to its claims for breach of guaranty and as to Robert's counterclaim. We also affirm the district court's order overruling Robert's motion to vacate. In case No. S-15-512, we vacate the district court's orders overruling the Watsons' objections to execution and garnishments.

FINAL ORDERS IN NO. S-15-512 VACATED.
JUDGMENT IN NO. S-15-872 AFFIRMED.

MILLER-LERMAN and STACY, JJ., not participating.